[No. B204561. Second Dist., Div. Eight. Aug. 19, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS FERNANDO FLORES, Defendant and Appellant.

COUNSEL

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Pamela C. Hamanaka, Assistant Attorneys General, Susan Sullivan Pithey and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, Acting P. J.**—Carlos Fernando Flores appeals from the judgment following his convictions in 2007 for crimes he committed in 1994. He

contends his history of domestic violence was used against him at trial in violation of the constitutional prohibition against the ex post facto application of laws. We disagree. Appellant also contends, and respondent concedes, that the court erred in fashioning appellant's sentence. We agree and order modification of the erroneous provisions. As modified, the judgment is affirmed.

## FACTS AND PROCEEDINGS

In the early 1990's, appellant Carlos Fernando Flores and Guadalupe Aguilar, whose families came from the same small Mexican town in Sinaloa, were romantically involved. They lived together as a couple for some period and had a child in October 1993. Following the birth of their child, their relationship ended and they took up separate residences.

In the summer of 1994, Aguilar began dating Oscar Molina. Although appellant and Aguilar no longer lived together, appellant claims they had remained a couple and had found an apartment in which they planned to resume sharing a home. One evening in November 1994, Aguilar was sitting with Molina in a car parked on a street near Aguilar's home when appellant drove up, parked in front of them, and got out of his car. Approaching Aguilar's side of the car, appellant yelled, "[Is] this the dog you are going out with?" Appellant ordered Aguilar out of the car, but she remained seated inside. To force her compliance, appellant drew a gun from his pocket and said, "Don't mess with Sinaloa," or "Don't fuck with Sinaloa." Molina saw appellant put his hand holding the gun through the car's open passenger window. The gun fired and a bullet pierced Molina's chin and lodged in his arm.

Dazed from his wound and having difficulty focusing, Molina heard appellant and Aguilar continue to argue. Molina then heard a second gunshot, and Aguilar's voice fell silent, fatally extinguished by a single gunshot. A moment later, Molina felt appellant standing next to Molina's side of the car. Feeling the gun against his head, Molina heard appellant say, "Die, you dog. Die." Molina heard the gun's firing mechanism click, but it did not fire; later that evening, police found several spent shells and live bullets on the ground and in the car. A police detective testified at trial that the live bullets were ejected when the gun malfunctioned as appellant attempted to fire it.

After the shootings, appellant fled to Mexico. Twelve years later, in 2006, he voluntarily returned to the United States, claiming he did so to apologize to Aguilar's family for her death. He was arrested and charged with Aguilar's murder and the attempted murder of Molina. He pleaded not guilty to both counts.

In May 2007, appellant stood trial. The jury convicted him of the willful, deliberate, and premeditated attempted murder of Molina. The jury could not reach a unanimous verdict on the degree of Aguilar's murder, however, with 10 jurors finding the murder was in the first degree and two finding it was second degree. The court declared a mistrial on the murder count and ordered it to be retried.

Appellant's retrial took place in October 2007. Appellant had not testified at his first trial. In his retrial, he took the stand and testified the shootings were accidental, caused by his and Aguilar's struggling for the gun when he pointed it at her to frighten her into complying with his demand that she get out of Molina's car. Rejecting appellant's story, the jury convicted appellant of first degree murder. The court sentenced appellant to state prison for 40 years to life with the possibility of parole. This appeal followed.

## DISCUSSION

A. *No Ex Post Facto Violation in Admitting Evidence of Prior Domestic Violence*

1. *Factual Context of Appellant's Argument*

In December 1992 and August 1993—before appellant's murder of Aguilar—he suffered at least two misdemeanor convictions for spousal battery against Marlene J., a previous girlfriend with whom he had a child.[1] Prior misconduct historically has been inadmissible under California law to prove a defendant had a propensity to commit a charged offense. (See generally Evid. Code, § 1101, subd. (a).)[2] Two years after Aguilar's murder, however, the Legislature created an exception for domestic violence. Enacted in 1996, section 1109 states: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1); see also Historical and Statutory Notes, 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1109, pp. 369–370; Stats. 1996, ch. 261, § 2, p. 1795.) "Domestic violence" includes "abuse committed against . . . [a] person with whom the suspect has had a child or is having or has had a dating or engagement relationship." (§ 1109, subd. (d)(3), incorporating Pen. Code, § 13700, subd. (b).)

---

[1] The record is unclear whether appellant suffered two or three convictions. The prosecutor insisted at one point there were three, but did not contradict defense counsel who asserted one conviction was "dismissed" after "diversion." Appellant's testimony wavered on the subject.

[2] All other statutory references are to the Evidence Code unless indicated otherwise.

By the time of trial, section 1109 had been a part of the Evidence Code for 11 years. Guided by that statute, the trial court allowed evidence of appellant's spousal battery convictions involving his former girlfriend. And relying on section 1109, the court instructed the jury that it could consider those convictions as evidence of appellant's disposition to commit violent crimes against Aguilar, including her murder. Instructing the jury with CALCRIM No. 852, the court stated: "The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically spousal battery. 'Domestic violence' means abuse committed against an adult who is a person with whom the defendant has had a child. . . . [¶] . . . [¶] If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and based on that decision also conclude that the defendant was likely to commit murder, voluntary manslaughter, or involuntary manslaughter as set forth herein."[3]

■ Appellant contends that because section 1109 was enacted after his crimes against Molina and Aguilar, its application against him violated the constitutional prohibition of ex post facto laws. We find no error.[4]

### 2. *Legal Analysis*

■ The proscription against the ex post facto application of laws has several components, each of which is designed to prevent a criminal defendant from being unfairly disadvantaged by a change in the law occurring between the time of the crime and the time of trial. (*Carmell v. Texas* (2000) 529 U.S. 513, 531–532 [146 L.Ed.2d 577, 120 S.Ct. 1620] (*Carmell*); *Collins v. Youngblood* (1990) 497 U.S. 37, 41–42 [111 L.Ed.2d 30, 110 S.Ct. 2715].)[5] Quoting from the classic exposition by Justice Chase in *Calder v. Bull* (1798) 3 U.S. 386 [1 L.Ed. 648, 3 Dall. 386], the United States Supreme Court in *Carmell* catalogued the rule in this manner: ■ " 'I will state *what laws* I consider *ex post facto laws*, within the *words* and the *intent* of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such

---

[3] The court ended the instruction with the sentence, "Do not consider this evidence for any other purpose except for the limited purpose of determining the defendant's credibility." We find this last sentence hard to reconcile with the rest of the instruction, but the parties have not raised the point in their briefs and therefore we pass on it.

[4] Appellant does not expressly direct his ex post facto arguments to his conviction of attempted premeditated murder of Molina, only to his murder conviction of Aguilar. We address his contentions in that context.

[5] The federal and state constitutional prohibitions of ex post facto application of laws are to the same effect. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 295 [279 Cal.Rptr. 592, 807 P.2d 434].)

action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*' [Citation.]" (529 U.S. 513, 522, quoting *Calder v. Bull, supra*, 3 U.S. at p. 390.)

It is the fourth category which is implicated by the trial court's ruling here.[6]

■ Appellant's position finds some support in a strictly literal reading of the language Justice Chase wrote some 200 years ago involving the receipt of "different testimony," but later, more refined analysis reveals no ex post facto violation in applying section 1109 because not every change in the rules of evidence is prohibited. Appellant's contention ignores that the fourth category bars the government from changing rules involving the *legal sufficiency* of the evidence, not the *admissibility* of a particular piece of evidence bearing upon a particular fact to be proved. A comparison of *Carmell* and the subsequent California Supreme Court case of *People v. Brown* (2004) 33 Cal.4th 382 [15 Cal.Rptr.3d 624, 93 P.3d 244] (*Brown*) illustrates the difference.

■ In *Carmell*, the Texas legislature had eliminated an "outcry or corroboration" requirement for proving sexual offenses against older minors. Before the legislative change, a victim's testimony about a sexual offense generally could not support a conviction unless corroborated by other evidence or the victim had informed another person of the offense within six

---

[6] In *People v. Fitch* (1997) 55 Cal.App.4th 172, 185–186 [63 Cal.Rptr.2d 753] (*Fitch*), a case cited by the People, the appellate court suggested that this fourth category—postcrime changes in the rules of evidence—was obsolete. *Fitch* addressed section 1108 which makes admissible prior sexual offenses to prove propensity in a current sexual offense prosecution. The *Fitch* court reached its ex post facto conclusions based on certain language in the United States Supreme Court's opinion in *Collins v. Youngblood, supra*, 497 U.S. at pages 41–42. Three years after *Fitch*, the court in *Carmell* made clear that *Collins v. Youngblood* did not abrogate the fourth component. (*Carmell, supra*, 529 U.S. at p. 537; see also *id.* at pp. 567–572 (dis. opn. of Ginsburg, J.).) As a matter of state law, all four categories of Justice Chase's description of the doctrine remain part of California jurisprudence. (See *John L. v. Superior Court* (2004) 33 Cal.4th 158, 172 [14 Cal.Rptr.3d 261, 91 P.3d 205].) Consequently, *Fitch*'s ex post facto analysis rests on shaky ground because it gave short shrift to the fourth category of ex post facto laws. Although *Fitch*'s analysis was incomplete, its conclusion that section 1108 did not violate the constitutional prohibition of ex post facto laws remains sound. (See *People v. Davis* (2009) 46 Cal.4th 539, 603, fn. 6 [94 Cal.Rptr.3d 322, 208 P.3d 78] [citing *Fitch* for proposition that § 1108 is not ex post facto law].) Moreover, *Fitch*'s principal holdings that section 1108 did not violate due process and equal protection also remain valid. (*Fitch*, at p. 184; see *People v. Falsetta* (1999) 21 Cal.4th 903, 919 [89 Cal.Rptr.2d 847, 986 P.2d 182] [approvingly citing *Fitch*].)

months of its occurrence; if the victim was younger than 14, however, the victim's testimony alone could be sufficient. After the defendant in *Carmell* committed offenses against a minor older than 14, the Texas legislature eliminated the requirement of outcry or corroboration for all minors, thus making the minor's testimony sufficient by itself to support a conviction. (*Carmell, supra,* 529 U.S. at pp. 516–519.) Challenging his conviction under the new law in the absence of outcry or corroboration evidence, the defendant asserted the new law's application against him violated the Constitution's ex post facto prohibition. The United States Supreme Court agreed. The Supreme Court explained: "[The Texas statute] is unquestionably a law 'that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.' Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony *and* corroborative evidence. The amended law, however, changed the quantum of evidence necessary to sustain a conviction; under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence. . . . Requiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence is surely 'less testimony required to convict' in any straightforward sense of those words." (*Carmell, supra,* 529 U.S. at p. 530; see also the case of Sir John Fenwick discussed by *Carmell,* at pp. 526–530 [ex post facto violation to reduce from two to one the number of witnesses required to sustain conviction for treason].) The court's holding is most persuasively read as limiting the fourth category to those changes in the rules of evidence that have the practical effect of lowering the " 'quantity or the degree of proof' " required to convict (*Carmell, supra,* 529 U.S. at pp. 543–544, italics omitted, quoting *Hopt v. Utah* (1884) 110 U.S. 574, 589–590 [28 L.Ed. 262, 4 S.Ct. 202])—in other words, evidentiary changes that reduce the legal sufficiency of the evidence necessary for a finding of guilt. "In particular, the elements of unfairness and injustice in subverting the presumption of innocence are directly implicated by rules lowering the quantum of evidence required to convict." (*Carmell,* at p. 546.) In contrast are those changes in the law that do no more than alter the rules for admissible evidence. "The issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained." (*Id.* at p. 546; see also *Niebauer v. Blanks* (N.D.Cal. 2003) 2003 WL 22288155, p. *8 ["effect of section 1109 was merely to permit the introduction of a type of evidence that was previously inadmissible. Because it did not lessen the quantum of

evidence required to convict" it did not violate ex post facto principles]; *Chavarria v. Hamlet* (N.D.Cal. 2003) 2003 WL 1563992, p. *13 [same].)[7]

Section 1109 does not reduce or otherwise change the sufficiency of evidence needed to support appellant's conviction for Aguilar's murder. Indeed, the court instructed the jury: "If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of murder, voluntary manslaughter, and/or involuntary manslaughter. The People must still prove each element of every charge beyond a reasonable doubt." Section 1109 merely made evidence of domestic violence admissible for a purpose for which it had previously been inadmissible—the propensity of a spousal batterer to commit other crimes of domestic violence.

■ *Brown, supra*, 33 Cal.4th at page 395, demonstrates that changes in admissibility of evidence do not violate the proscription against ex post facto application of laws. In *Brown*, victim impact testimony was inadmissible at the time the defendant committed his crimes. Between the commission of the crime and the defendant's trial, the law changed, however, to permit admission of such statements. (The change in law was by case law, not by legislation, but the difference does not affect the analysis.) (*Id.* at p. 394, citing *People v. Edwards* (1991) 54 Cal.3d 787, 832–833 [1 Cal.Rptr.2d 696, 819 P.2d 436].) The *Brown* court held admission of a victim impact statement was not an ex post facto violation because its admission did not "alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed." (*Brown*, at p. 394, italics omitted.) *Brown* then can best be seen as an application of a Supreme Court case, *Thompson v. Missouri, supra*, 171 U.S. 380, a case our Supreme Court cited in *Brown*, at page 395. In upholding postcrime changes in the evidentiary rules governing admissibility of documents, the court said, "[W]e cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules

---

[7] The unpublished federal decisions cited in the text are citable as persuasive although not precedential authority notwithstanding California Rules of Court, rule 8.1115(a). (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1319, fn. 6 [93 Cal.Rptr.3d 768].)

Justice Ginsburg's dissent in *Carmell* takes on the majority not for limiting the fourth category to those evidentiary changes that reduce the legal sufficiency of the evidence. It quarrels with the majority's conclusion that corroboration rules raised the quantum of proof necessary to convict. (*Carmell, supra*, 529 U.S. at pp. 556–558; see also *Thompson v. Missouri* (1898) 171 U.S. 380, 387 [43 L.Ed. 204, 18 S.Ct. 922] [no ex post facto violation in retroactive application of statute that permitted the introduction of previously inadmissible evidence to authenticate writings].) Justice Ginsburg suggested as an alternative analytical framework one focusing on the burden of persuasion rather than the burden of proof. (*Carmell*, at pp. 570–572 (dis. opn. of Ginsburg, J.).)

of evidence as enforced by judicial decisions at the time the offense was committed." (*Thompson v. Missouri*, at p. 387.)

Likewise here. Under *Brown*, admission of appellant's history of domestic violence did not change the elements of the crime of murder or lower the prosecution's burden of proving those elements beyond a reasonable doubt in order to achieve a conviction. And under *Thompson v. Missouri*, introduction of past domestic violence did nothing more than admit evidence upon an issue of fact which was not previously admissible.

Appellant contends section 1109 always works in the prosecution's favor because the prosecutor's ability to rely on propensity evidence strengthens the prosecution's hand. (Cf. *People v. Garceau* (1993) 6 Cal.4th 140, 186 [24 Cal.Rptr.2d 664, 862 P.2d 664], disapproved on another point in *People v. Yeoman* (2003) 31 Cal.4th 93, 117–118 [2 Cal.Rptr.3d 186, 72 P.3d 1166].) As such, section 1109 is, according to appellant, "unfair" and its unfairness violates the proscription against ex post facto application of laws, which has as its animating principle "fairness." In support, appellant quotes *Carmell*, giving particular emphasis to the italicized portion: "A law reducing the quantum of evidence required to convict an offender is as grossly unfair as, say, retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof . . . . All of these legislative changes, in a sense, are mirror images of one another. In each instance, *the government refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction. There is plainly a fundamental fairness interest,* even apart from any claim of reliance or notice, *in having the government abide by the rules of law it establishes* to govern the circumstances under which it can deprive a person of his or her liberty or life." (*Carmell, supra,* 529 U.S. at pp. 532–533, italics added, citation omitted.) But a footnote attending the passage appellant quotes from *Carmell* defeats appellant's argument. Footnote 23 notes balance and fairness in the "rules of the game" between prosecution and defense are desirable, but they are not independently viable principles of ex post facto jurisprudence. The footnote explains: "[Evidentiary] rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption. Therefore, to the extent one may consider changes to such laws as 'unfair' or 'unjust,' they do not implicate the same *kind* of unfairness implicated by changes in rules setting forth a sufficiency of the evidence standard. Moreover, while the principle of unfairness helps explain and shape the Clause's scope, it is not a doctrine unto itself, invalidating laws under the *Ex Post Facto* Clause by its own force." (*Carmell, supra,* 529 U.S. at p. 533, fn. 23; see also *Schroeder v. Tilton* (9th Cir. 2007) 493 F.3d 1083, 1088 (*Schroeder*), citing *Carmell* to same effect.) Consequently, even if admission of evidence showing a history

of domestic violence disadvantages appellant, it does not violate his constitutional right to be free of ex post facto application of the law.

■ Our holding that section 1109 is constitutionally sound draws support from section 1108, a statute analogous to section 1109 involving admission of evidence of past sexual offenses that has withstood direct ex post facto challenges. Section 1108 states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

In *Schroeder, supra*, 493 F.3d 1083, the defendant contended section 1108's admission of evidence of his past sexual victimization of others before section 1108 was enacted violated the ex post facto prohibition against receipt of " 'less or different' " evidence by lowering the " 'quantum of proof' " needed to convict him. (*Schroeder*, at p. 1088.) The Ninth Circuit Court of Appeals rejected his contention. Noting that section 1108 made admissible previously inadmissible evidence of past sexual offenses, but did not change the elements of the crime or burden of proof, the Ninth Circuit found no ex post facto violation. The court explained: "[Section] 1108 is an 'ordinary' rule of evidence that does not violate the Ex Post Facto Clause. [Citation.] The text of § 1108 does not speak to the sufficiency of the evidence it renders admissible. It simply states that evidence of prior uncharged sexual misconduct may be admitted to prove propensity. [Citation.] The rule, 'by simply permitting evidence to be admitted at trial, . . . do[es] not concern whether the admissible evidence is sufficient to overcome the presumption [of innocence].' [Citation.] Nothing in the text of § 1108 suggests that the admissible propensity evidence would be sufficient, by itself, to convict a person of any crime. Section 1108 relates to admissibility, not sufficiency." (*Schroeder, supra*, 493 F.3d at p. 1088.) Although *Schroeder* involved a statute different from section 1109, the operative language of both statutes is sufficiently alike—to wit, "a criminal action in which the defendant is accused of an offense involving domestic violence [or a 'sexual offense,'] evidence of the defendant's commission of other domestic violence [or 'another sexual offense or offenses'] is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352"—that *Schroeder*'s analysis effortlessly glides over to cover section 1109 before us.

## B.  *Parole Revocation Fine—Ex Post Facto Violation*

The court imposed a $2,000 parole revocation fine on appellant under Penal Code section 1202.45. The Legislature enacted section 1202.45 in 1995, after appellant's offenses here. Citing *People v. Callejas* (2000) 85 Cal.App.4th 667

[102 Cal.Rptr.2d 363], appellant contends the fine violates the proscription against ex post facto laws because it makes his punishment more burdensome. (*Id.* at p. 676 ["the ex post facto clause forbids imposing a parole revocation fine on a parolee who committed the underlying crime prior to enactment of the fine"].) Respondent agrees *Callejas* controls, and joins in appellant's request that we strike the parole revocation fine.

## C. *Denial of Good Conduct Credits—Ex Post Facto Violation*

Appellant spent 494 days in actual custody before the court sentenced him to prison. The court awarded appellant presentence custody credit for those days. The court did not, however, award appellant good time/work time presentence custody credits. The court relied on Penal Code section 2933.2, subdivision (c), which denies good conduct presentence credits to a person convicted of murder.

Penal Code section 2933.2, subdivision (c) was enacted after appellant's offenses here. The law in effect when appellant killed Aguilar allowed convicted murderers to earn good conduct credit up to an amount equal to 15 percent of their actual time in presentence custody. Appellant contends the change in the law ending his ability to earn good conduct presentence credit violated the proscription against ex post facto laws. (*Weaver v. Graham* (1981) 450 U.S. 24, 36 [67 L.Ed.2d 17, 101 S.Ct. 960]; *People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1317 [109 Cal.Rptr.2d 643].) Respondent agrees and acknowledges that appellant may be entitled to good conduct presentence credits of up to 74 days. Rather than remand this matter to the trial court for its calculation of appellant's good conduct presentence credits (see *People v. Hutchins*, at p. 1317, fn. 9 [remand for calculation]), in the interest of judicial efficiency we calculate them as amounting to 74 days of good time/work time credits (*People v. Ly* (2001) 89 Cal.App.4th 44, 47 [106 Cal.Rptr.2d 818] [appellate court calculated credits]).

## D. *Seven-year Term for Attempted Murder—Ex Post Facto Violation*

The court sentenced appellant to the midterm of seven years for his attempted murder of Oscar Molina. Because the jury found the offense was willful, deliberate, and premeditated, the court also imposed a consecutive indeterminate life term with the possibility of parole. The sentencing statute in effect when appellant committed his offense imposed a life term with the possibility of parole for attempted premeditated murder, and did not provide for a seven-year midterm. Appellant contends the court erred in imposing the seven-year term, and respondent agrees. Appellant therefore asks that we strike the seven-year term, a request in which respondent concurs.

## DISPOSITION

The clerk of the superior court is directed to (1) strike the $2,000 parole revocation fine imposed under Penal Code section 1202.45 for appellant's conviction for the murder of Guadalupe Aguilar; (2) amend the abstract of judgment to show 74 days of good conduct presentence custody credits; and (3) strike the seven-year consecutive term for the attempted murder of Oscar Molina, thus shortening appellant's sentence to 33 years to life with the possibility of parole. As amended, the judgment is affirmed.

Flier, J., and Bendix, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176641.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.