Filed 12/30/13  P. v. Patton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047488 |
| v. | (Super. Ct. No. 09CF0923) |
| RASAAN RAYMON PATTON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed as modified.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine Gutierrez and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Rasaan Raymon Patton appeals from a judgment after a jury convicted him of kidnapping to commit a sex offense, attempted forcible rape, sexual penetration by a foreign object by force, and sexual battery by restraint. Patton argues there was insufficient evidence he committed aggravated kidnapping and the trial court erred in awarding him credits. We agree the trial court erred in awarding Patton credits, but his other claim has no merit. We affirm the judgment as modified.

FACTS

Around 2:30 a.m. one June morning in 2008 in Huntington Beach, 17-year-old L.T. was driving home in her family's Toyota Sienna minivan (the Minivan) after spending the evening with her friend, Breigh Dang. As she drove, L.T. saw a Jeep traveling behind and just to the right of her. As L.T. signaled and prepared to make a left turn, the Jeep bumped her from behind. L.T. drove the Minivan to the right side of the road and parked, and Patton parked about five feet behind the Minivan. L.T. and Patton got out of their respective vehicles. As L.T. inspected the Minivan, Patton approached her and apologized profusely. After L.T. said there did not appear to be much damage, Patton grabbed L.T. by the waist and dragged her to the sidewalk on the passenger side of the Minivan.

Patton asked L.T. whether "he was going too far." L.T. said he was and asked Patton to stop, but he did not. Patton used his body weight to pin L.T. against the Minivan and prevent her from leaving. Patton reached under L.T.'s dress and grabbed her buttocks with his left hand. With his right hand, Patton pulled L.T.'s underpants to the side and put two fingers inside her vagina. Patton pulled down L.T.'s underpants to mid-thigh and unzipped his pants. Patton repeatedly asked L.T. "if he was going too far." She said he was and asked him to stop. During the course of the assault, L.T. saw the lights of a few cars drive by and Patton became more nervous and scared with each vehicle that passed them. Patton repeatedly apologized, stopped assaulting L.T., and started to cry. Patton told L.T. she could leave and he got into his vehicle and sped away.

2

Minutes later, Officer Tai Huynh initiated a traffic stop of the Jeep that Patton was driving after he made an illegal turn. Patton did not have his driver's license, but he identified himself and said he was driving on a suspended license. Huynh took Patton's thumbprint for identification purposes. Huynh detected a strong odor of alcohol on Patton's breath, but he did not appear to be intoxicated. Huynh determined Patton was driving on a suspended license and issued him a citation and impounded the Jeep, which had damage to the front bumper. Patton walked away.

Meanwhile, L.T. drove home, called her friends and told them what had happened, took a shower, and unsuccessfully tried to sleep. That afternoon, L.T. went to the Huntington Beach Police Department with her friends, Dang and Kevin Do to report the incident. L.T. was taken to the hospital for a sexual assault examination, which revealed a tear or laceration to her external genitalia, that was consistent with L.T.'s description of what had happened.

L.T. accompanied crime scene investigator Shelley Shannon to the scene of the crime and demonstrated what had happened. Shannon took photographs and measurements of the area and of the Minivan and recovered fingerprint exemplars from the Minivan. Shannon determined Patton moved L.T. about nine feet and eight inches from where she was looking at the damage to the Minivan to the sidewalk where Patton assaulted her. The incident occurred near a flood control channel. Detective Tom Weizoerick processed the DNA samples and the fingerprint exemplars, but there were no matches.

About nine months later, after Patton had been arrested for driving under the influence[1] and provided his fingerprints, Weizoerick learned there had been a match on the fingerprint recovered from the Minivan. He obtained a warrant for Patton's arrest.

---

[1] Although the probation report indicates Weizoerick arrested Patton on April 15, 2009, Weizoerick testified he arrested him two days earlier.

Weizoerick and Riverside County Sheriffs arrested Patton at his home in Perris. L.T. could not identify Patton in any of the photographic lineups she reviewed.

Weizoerick and another detective interviewed Patton after advising him of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Patton initially stated he had not been to Huntington Beach in a long time and denied he engaged in any sexual activity other than with his wife. Eventually, Patton admitted he rear-ended L.T., stated she did not want his insurance information because of the minimal damage, and said he was relieved because he was driving on a suspended license. Patton also admitted he rubbed L.T.'s buttocks and pubic area over her underwear, but when she appeared tense, he stopped and asked her whether he had gone too far. Patton claimed he apologized, got into his car, and drove away. Patton denied he put his finger inside L.T.'s vagina, he grabbed her, or pulled down her underpants, and claimed the incident occurred between the two vehicles and not on the sidewalk.

An information charged Patton with kidnapping to commit a sex offense, rape and digital penetration (Pen. Code, § 209, subd. (b)(1))[2] (count 1), attempted forcible rape (§§ 664, subd. (a), 261, subd. (a)(2)) (count 2), sexual penetration by a foreign object by force (§ 289, subd. (a)(1)) (count 3), and sexual battery by restraint (§ 243.4, subd. (a)) (count 4). The information alleged Patton suffered a prior felony sex conviction (§ 667.6, subd. (a)), suffered a prior serious and violent felony conviction (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)), and suffered a prior prison term (§ 667.5, subd. (b)).

At trial, L.T. testified concerning the circumstances of the offense as detailed above. She could not identify Patton at trial. Shannon testified regarding her recovery of physical evidence and her conclusion Patton moved L.T. nearly 10 feet. The

---

[2]     All further statutory references are to the Penal Code.

parties stipulated Patton's fingerprints matched a partial handprint recovered from the Minivan.

At the close of the prosecutor's case-in-chief, Patton moved to dismiss count 1 pursuant to section 1118.1 because the movement was incidental to the sexual assault and the movement did not substantially increase the risk of harm. Citing to case law, the prosecutor argued there is no minimum distance that a victim must be moved, and Patton's movement of L.T. was to avoid detection and increased the risk of harm because he effectively moved her behind a wall, the Minivan, where passing cars could not see them. The trial court indicated it would review the case law and took the matter under submission. The next day, the court denied Patton's motion. The court reasoned Patton's forcible movement of L.T. nine feet to a dark area behind the Minivan made it more difficult for L.T. to escape and enhanced Patton's opportunity to commit additional crimes. The court concluded that it was an issue for the jury to decide.

Pursuant to the prosecutor's motion, the trial court admitted into evidence documents establishing that in May 1999, Patton pled guilty to violating section 261, subdivision (a)(3), rape of an intoxicated woman.

The jury convicted Patton of all counts. At a bifurcated bench trial, the trial court found the prior conviction and prison term allegations to be true. The trial court sentenced Patton to 20 years to life in prison as follows: 14 years to life on count 1, five years for the prior felony sex conviction, and one year for the prior prison term allegation. Pursuant to section 654, the court stayed the sentences on counts 2, 3, and 4. The court awarded Patton 1,235 days of actual credit but no conduct credit.

DISCUSSION

I. *Sufficiency of the Evidence*

Patton argues there was insufficient evidence he committed aggravated kidnapping because there was no evidence of asportation. Patton initially argues insufficient evidence supports his conviction, but also contends the trial court erred in

5

denying his motion to dismiss pursuant to section 1118.1.  As we explain below, the standard of review is the same, and Patton's claim is meritless.

"An appellate court reviews the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction. [Citation.]  'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]  [¶]  The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations.  [Citation.]  "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding."  [Citation.]  We do not reweigh evidence or reevaluate a witness's credibility.'  [Citation.]  Review of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point.  [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

The crime of *simple kidnapping* is contained in section 207.  In relevant part, section 207, subdivision (a), provides:  "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."

The crime of *aggravated kidnapping* for purpose of enumerated sexual offenses is contained in section 209, subdivisions (b) and (d).  Section 209,

subdivision (b)(1), states: "Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or any violation of [s]ection[s] 264.1, 288, or 289, shall be punished by imprisonment in the state prison for life with the possibility of parole." Section 209, subdivision (b)(2), provides: "This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."

The following three elements comprise the crime of kidnapping: "'(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a *substantial distance*.' [Citation.]" (*People v. Bell* (2009) 179 Cal.App.4th 428, 435, italics added.) The last element is the asportation element and is required for both simple kidnapping and aggravated kidnapping. (*Ibid*.) The issue is, and has been for some time, what evidence must a prosecutor offer to establish asportation?[3]

In *People v. Robertson* (2012) 208 Cal.App.4th 965 (*Robertso*n), the Fifth District Court of Appeal, interpreted section 209, subdivision (b)'s asportation requirement in light of the Legislature's 1997 amendment. The *Robertson* court discussed the legislative history of aggravated kidnapping, including the 1990 amendment that added kidnappings committed for the purpose of rape, and the 1997 renumbering from section 208, subdivision (d), to section 209, subdivision (b). (*Robertson, supra,* 208 Cal.App.4th at p. 979.) The *Robertson* court stated that in 1994,

---

[3] In *People v. Dominguez* (2006) 39 Cal.4th 1141, 1145 (*Dominguez*), the California Supreme Court indicated consistency on this issue "has eluded the appellate courts[.]" The court interpreted section 208, subdivision (d)'s asportation element because defendant committed his offenses before the Legislature moved aggravated kidnapping to section 209, subdivision (b). The court expressed no opinion on the asportation element under section 209, subdivision (b). (*Dominguez, supra,* 39 Cal.4th at p. 1150, fn. 5.)

7

the California Supreme Court in *People v. Rayford* (1994) 9 Cal.4th 1 (*Rayfor*d), held the test for asportation articulated in *People v. Daniels* (1969) 71 Cal.2d 1119,[4] applied to aggravated kidnapping for the purpose of rape. (*Robertson, supra,* 208 Cal.App.4th at p. 979.) The *Robertson* court explained two California Supreme Court cases "briefly addressed" the Legislature's 1997 revision to section 209 and clarified the movement must increase the risk of harm but that the increase in the risk of harm need not be substantial. (*Robertson, supra,* 208 Cal.App.4th at p. 980.)[5] The *Robertson* court opined: "In sum, we hold that section 209, subdivision (b)(2)[,] requires the People to prove beyond a reasonable doubt that appellant's movement of the victim was not merely incidental and that it increased the risk of harm to the victim over and above that which is inherent in the sexual offense itself. Yet, section 209, subdivision (b)(2) does not require proof that the movement *substantially* increased the risk of harm to the victim." (*Robertson, supra,* 208 Cal.App.4th at p. 982.)

The *Robertson* court concluded: "'Kidnapping to commit rape involves two prongs. First, the defendant must move the victim and this asportation must not be "merely incidental to the [rape]." [Citations.] Second, the movement must increase "the risk of harm to the victim over and above that necessarily present in the [rape]." [Citation.] The two are not mutually exclusive, they are interrelated. [Citation.] [¶] 'For

---

[4] The *Rayford* court articulated that test as follows: "[T]he standard of asportation for [former] section 208[, subdivision] (d) kidnapping requires that the movement of the victim be for a distance which is more than that which is merely incidental to the commission or attempted commission of rape . . . and that this movement substantially increase the risk of harm to the victim over and above that necessarily present in the commission or attempted commission of these crimes." (*Rayford, supra,* 9 Cal.4th at p. 22.)

[5] The *Robertson* court stated though that in those cases, *People v. Vines* (2011) 51 Cal.4th 830, and *People v. Martinez* (1999) 20 Cal.4th 225, and *Dominguez, supra,* 39 Cal.4th at p. 1150, fn. 5, the offenses predated the 1997 amendment and the courts interpreted section 208, subdivision (b), and not section 209, subdivision (b).

8

the first prong, the jury considers the distance the defendant moved the victim and the "scope and nature" of the movement. [Citations.] For the second, it considers whether the movement gave the defendant "the decreased likelihood of detection" and an "enhanced opportunity to commit additional crimes." [Citation.]' [Citation.]" (*Robertson, supra,* 208 Cal.App.4th at p. 983.)

Based on the record before us, we conclude Patton's movement of L.T. from the street between the two vehicles to the sidewalk behind the Minivan secluded from passing cars was not merely incidental and increased L.T.'s risk of psychological harm above the risk inherent in the crime of rape. Patton's movement of L.T. was not merely incidental to the rape. The evidence established that after L.T. inspected the damage to the Minivan and told Patton there did not appear to be much damage, Patton grabbed L.T. by the waist and dragged her from the street between the two cars to the sidewalk behind the Minivan. After L.T. agreed Patton "was going too far[,]" Patton pinned L.T. against the Minivan, reached under her dress, and put two fingers inside her vagina. It is true Patton moved L.T. only nine to 10 feet, but he moved her behind the Minivan where it would make it more difficult for someone in a passing car to see him sexually assaulting her. (*People v. Shadden* (2001) 93 Cal.App.4th 164, 169 ["Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape"].) Thus, the jury could reasonably conclude the movement was not incidental to the rape because Patton only began the sexual attack after he moved L.T. behind the Minivan.

Additionally, Patton's movement of L.T. increased the risk of harm because the movement decreased the likelihood of detection, increased the dangers inherent in L.T.'s foreseeable attempts to escape, and enhanced Patton's opportunity to commit additional crimes. Patton spends the majority of his time arguing his movement of L.T. did not decrease the likelihood of detection but instead increased the likelihood of detection. He insists L.T. was "visible from more vantage points" from the sidewalk than

9

she would have been between the cars.  That was for the jury to decide, and it resolved that question against Patton.

First, it was almost three a.m., and the majority of people passing by would be in cars, not pedestrians.  Occupants of a passing car would be more likely to see Patton and L.T. standing between the Minivan and the Jeep than Patton and L.T. concealed behind the Minivan.  Second, Patton pinned L.T. against the Minivan.  It would have been difficult, if not impossible, for occupants of a passing car to be at the perfect angle and perfect distance to see two people pinned against the Minivan regardless of how well the area was lit.  Patton also claims that because L.T. could see car lights, occupants of a passing car could see her.  Nonsense.  Needless to say, the fact L.T. could see the glare or reflection of car lights does not mean she was visible to the occupants of the passing cars.  Finally, the fact Patton unzipped his pants indicates he initially felt concealed enough to escalate the encounter and attempt to rape L.T.  Our review of the trial exhibits does not alter our conclusion Patton forcible moved L.T. behind the Minivan to conceal and sexually assault her.

Second, the movement increased the dangers inherent in L.T.'s foreseeable attempts to escape.  The evidence established Patton grabbed L.T., drug her to the sidewalk, and pinned her against the Minivan.  L.T. was trapped between the Minivan on one side and the flood control channel on the other side.  Thus, avenues of escape were decreased by her movement.

Finally, the movement increased Patton's opportunity to commit additional crimes.  Patton forcibly moved L.T. to the sidewalk and concealed her from passing cars behind the Minivan.  Because they were hidden from passing cars, Patton had time to reach under L.T.'s dress, grab her buttocks, and put two fingers inside her vagina.  Additionally, he had time to unzip his pants and prepare to rape L.T.  Although not capable of certainty, the fact three or four cars passed by and no one stopped indicates

10

Patton's movement of L.T. effectively concealed them and allowed Patton to digitally penetrate L.T.

Dominguez, supra, 39 Cal.4th 1141, is instructive. Although the California Supreme Court in Dominguez, supra, 39 Cal.4th 1141, limited its holding to section 208, subdivision (d), its reasoning as to the elements that survived the Legislature's 1997 amendment is instructive. In that case, defendant at night forcibly moved a victim from a road to a spot 25 feet away, and 10 to 12 feet down an embankment where a passing driver would likely not see her. The court reasoned, "The movement thus changed the victim's environment from a relatively open area alongside the road to a place significantly more secluded, substantially decreasing the possibility of detection, escape or rescue." (Id. at p. 1153.) Here, Patton did not move L.T. down an embankment, but he did move her behind the Minivan and changed her environment to a more secluded area where it would make it difficult for her to escape or be detected by occupants of passing cars.

Patton relies on People v. Stanworth (1974) 11 Cal.3d 588 (Stanworth),[6] where the California Supreme Court reversed a conviction for aggravated kidnapping because "there [was] no evidence . . . the relatively brief movement of the victim . . . removed her from public view or in any other manner substantially increased the risk . . . ." (Id. at p. 598.) In that case, defendant moved the victim 25 feet from a road to an open field where he bound, raped, and robbed her. (Id. at p. 597.) Here, as we explain above more fully, Patton moved L.T. less than 25 feet, but it was not to an open area. He moved her behind the Minivan to an area where the jury could reasonably conclude it would be more difficult for someone in a passing vehicle to see her.

Patton relies on a number of cases where the defendant moved the victim more than 100 feet to argue movement of only nine feet is insufficient to establish

---

[6] Stanworth was overruled on other grounds in People v. Martinez (1999) 20 Cal.4th 225, 237.

11

substantial distance.  (*People v. Rayford* (1994) 9 Cal.4th 1 [105 feet]; *People v. Aguilar* (2004) 120 Cal.App.4th 1044 [133 feet]; *People v. Diaz* (2000) 78 Cal.App.4th 243 [150 feet].)  As we have explained, actual distance is a relevant factor but one that must be considered in context.  (*Dominguez, supra,* 39 Cal.4th at p. 1152.)  The jury considered that factor in context, and concluded movement of nine to 10 feet, behind a Minivan was sufficient.  Thus, because there was sufficient evidence of asportation, the trial court properly denied Patton's section 1118.1 motion to dismiss, and sufficient evidence supports his conviction for aggravated kidnapping.

II.  *Custody Credits*

Patton contends the trial court erred in awarding him credits because he should be awarded the following:  (1) two additional days of actual credits; and (2) conduct credits limited to 15 percent of the actual time he served.  The Attorney General agrees on both counts.

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days.  (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526.)  Calculation of custody credit begins on the day of arrest and continues through the day of sentencing.  (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.)  A defendant is also entitled to conduct credits under section 4019.  However, section 2933.1, subdivision (a), states, "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of [s]ection 667.5 shall accrue no more than 15 percent of worktime credit, as defined in [s]ection 2933."  Patton concedes he is subject to the 15 percent limitation.

Patton *correctly* states the probation report *incorrectly* states his arrest date was April 15, 2009, and claims he should be awarded two additional days of actual credit. However, he incorrectly states his arrest date was April 19, 2009, which would actually result in less actual credit.  Weizoerick arrested Patton on April 13, 2009.  The trial court sentenced Patton on August 31, 2012.  Thus, the trial court should have awarded Patton

1,237 days of actual credit, not 1,235 days.  Additionally, the court should have awarded Patton 185 days of conduct credit for a total of 1,422 days of total credit.  (*People v. Flores* (2009) 176 Cal.App.4th 1171, 1182 [appellate court calculate conduct credits in interests of judicial efficiency].)

## DISPOSITION

Patton is awarded 1,237 days of actual credit and 185 days of conduct credit for a total of 1,422 days of total credit.  The clerk of the superior court is directed to prepare a new abstract of judgment reflecting the new award of credits, and to forward the amended abstract of judgment to the Department of Corrections, Division of Adult Operations.  We affirm the judgment as modified.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

13