Filed 12/6/13  P. v. Kruse CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RICHARD FREDERICK KRUSE,<br><br>        Defendant and Appellant. | A135642<br><br>(Mendocino County<br>Super. Ct. No. SCUKCRCR 10-15372) |

A jury convicted defendant Richard Kruse of committing a forcible lewd or lascivious act upon a child under the age of 14 years. (Pen. Code, § 288, subd. (b)(1).)[1] The trial court sentenced him to a prison term of ten years. Defendant appeals upon contentions that (1) evidence of uncharged lewd acts with another child was wrongly admitted; (2) the trial court failed in its duty to instruct the jury on the lesser included offense of a non-forcible lewd act; (3) there is insufficient evidence that force was used; (4) the court erred in its admission and consideration of certain information during sentencing; and (5) the court failed to provide defendant with a hearing on his ability to pay before ordering him to pay $5,000 for legal assistance he received from the public defender.

We conclude that evidence of uncharged prior lewd acts was properly admitted but that the trial court erred in failing to instruct the jury on the lesser included offense of a non-forcible lewd act.  We also find insufficient evidence that defendant used force,

---

[1] All further section references are to the Penal Code except as noted.

violence, duress, menace or fear in committing the act. There was no error in the court's consideration of certain information at sentencing and we conclude that defendant forfeited his claim that legal costs were imposed upon him without a determination of his ability to pay. We shall modify the judgment to reduce the conviction from commission of a forcible lewd act to commission of a non-forcible lewd act and remand for resentencing.

**Statement of Facts**

In 2008, defendant was a married, 65-year-old man who babysat two girls for a few hours after school and on occasional sleep-overs. Defendant began babysitting J.H.[2] when she was six years old. In May 2008, the police investigated a child protective services report of possible child sexual abuse of J.H., who was then seven years old.

J.H. had previously reported molestation in 2005 when she was five years old, before having contact with defendant. At that time, J.H. identified her maternal grandfather as a molester and described the molestation in detail to a social worker. The incident was investigated but never prosecuted. In May 2008, the same social worker interviewed J.H. about possible sexual abuse. J.H. told the social worker that defendant touched her chest, buttocks, and vagina area.

The police twice interviewed defendant in July 2008. Defendant said J.H. was "definitely being molested" but not by him. Defendant described J.H. as "a very sexual little girl" and described instances in which she exposed herself to him and once placed his hand on her crotch, over her underwear. Defendant said J.H. asked him to "French kiss" her and invited him to masturbate in front of her, but he told her "absolutely not." Defendant proceeded to admit "inappropriate behavior" with J.H., but denied it was sexual. Defendant said he rubbed her arms, legs, back, abdomen and chest "skin to skin" at her request. Defendant also once rubbed her buttocks, over her underwear. Defendant understood one should not touch "somebody else's minor child" but insisted he touched J.H. because she liked it and it comforted her. Defendant described the rubbing as "a

---

[2] We use initials or first names to protect victim privacy.

2

loving comfort thing" for J.H. Defendant said neither he nor J.H. were "aroused sexually" by the activity.

In November 2010, a complaint was filed charging defendant with committing a forcible lewd or lascivious act upon a child (§ 288, subd. (b)(1)) between August 1, 2007 and May 30, 2008. Defendant was also charged with oral copulation or sexual penetration of a child (§ 288.7, subd. (b)) during the same time period.

J.H. was 11 years old at the time of trial in March 2012. J.H. testified that defendant babysat her after school when she was seven years old. J.H. said defendant touched her legs, chest and vagina with his hand, sometimes over her clothes and sometimes reaching under her clothes. J.H. testified that defendant put his finger inside her vagina. She said another child, her friend S.N., was sometimes present when defendant touched J.H.'s vagina and that defendant did the same thing to S.N. J.H. testified that she asked defendant not to touch her but he did anyway. J.H. said that when defendant was touching her vagina he said, "If I told anybody, he would hurt me." On cross-examination, J.H. said she did not remember ever talking to the social worker about her grandfather doing "the same thing" to her.

A 40-year-old woman testified that defendant molested her when she was a child. The woman, Sara P., said defendant was a family friend who babysat her when she was six years old. She said defendant touched her vagina with his hand, reaching under her clothes. Sara testified that defendant also masturbated in front of her. Sara said defendant once cut her hair and held it as a keepsake. Sara testified she was afraid to tell anyone about the molestation until she was an adult. In 1992 or 1993, when she was in her early twenties, she told her mother and also confronted defendant. Sara said defendant denied molesting her and told her things happened to her "at home" and that she was "a very sexual child." Sara did not report defendant's sexual abuse to the police until 2010.

A police officer testified that he searched defendant's home in 2008, following J.H.'s accusation of child molestation. The police found a lock of hair. The police asked

defendant about it. Defendant said the hair belonged to his granddaughter Katie[3] and was kept for "sentimental reasons." Defendant said J.H. gave him a lock of her hair but "[i]t got thrown away." Defendant was interviewed by the police in 2010 and, this time, said the hair found in his house belonged to J.H. and was given to him by her. The police asked defendant about Sara and defendant said she was molested but not by him. The officer testified that he also spoke with Sara's mother and confirmed that Sara, when a young adult, had told the mother about defendant's sexual abuse. Defendant's videotaped interviews with the police in 2008, summarized above, were played for the jury.

Defendant did not testify. The defense presented the testimony of several witnesses, including S.N., whom J.H. said witnessed her molestation and was herself a victim. S.N. was 12 years old at the time of trial. She testified that defendant babysat her and her friend J.H. when the girls were in the second grade. S.N. said she understood the difference between "good touching and bad touching." S.N. defined a "bad touch" as touching in a "place where you would be covered by underwear or a bathing suit." S.N. said she never saw defendant "do a bad touch" to J.H. About herself, S.N. testified defendant never touched her "in a private place."

**Discussion**

1. Evidence of prior sexual offenses was properly admitted.

Sara's testimony that defendant molested her 34 years earlier, when she was six years old, was admitted under Evidence Code section 1108, subdivision (a): "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 [prohibiting the use of prior acts to prove criminal disposition], if the evidence is not inadmissible pursuant to Section 352 [as more prejudicial than probative]."

---

[3] Defendant previously told the police "I never had kids of my own" so Katie's relationship to defendant is unclear.

A. *No due process violation*

Defendant asserts that "admission of character evidence to prove criminal disposition under Evidence Code section 1108 violates Due Process." Defendant raises the claim to preserve it for federal review; he acknowledges that the California Supreme Court has rejected the claim. In *People v. Falsetta* (1999) 21 Cal.4th 903, 917, the Court held that a "trial court's discretion to exclude propensity evidence under [Evidence Code] section 352 saves [Evidence Code] section 1108 from defendant's due process challenge." That determination is binding upon us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

B. *No ex post facto violation*

Defendant asserts that evidence of sexual offenses committed 20 years before Evidence Code section 1108 was enacted in 1995 violates the constitutional prohibition against ex post facto laws. (Stats. 1995, ch. 439, § 2.) The ex post facto clause does not apply to the rule of evidence established by Evidence Code section 1108.

"No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . " (U.S. Const., art. 1, § 10, cl. 1.) The proscription against ex post facto laws has long been held to apply to four categories: " '1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.' " (*Carmell v. Texas* (2000) 529 U.S. 513, 522 (*Carmell*), quoting *Calder v. Bull* (1798) 3 U.S. 386, 390, italics omitted.)

Defendant maintains that Evidence Code section 1108 fits within this last category. We disagree. The United States Supreme Court has explained that not "every rule that has an effect on whether a defendant can be convicted implicates the *Ex Post Facto* Clause. Ordinary rules of evidence . . . do not violate the Clause." (*Carmell, supra,*

5

529 U.S. at p. 533, fn. 23.) Only laws that "lower the burden of proof and laws that reduce the quantum of evidence necessary to meet that burden" implicate ex post facto concerns. (*Id.* at p. 541.) Laws that "relate to modes of procedure only" without altering the degree or amount of proof necessary to convict may be applied retrospectively. (*Id.* at p. 544.)

The Supreme Court has upheld retrospective application of a rule permitting testimony by convicted felons (*Hopt v. Utah* (1884) 110 U.S. 574) and a rule permitting the introduction of expert handwriting testimony (*Thompson v. Missouri* (1898) 171 U.S. 380). As the Court recently explained, changes to rules on witness competency and evidence admissibility are outside the scope of the ex post facto clause provided the rules leave untouched the amount or degree of proof essential to conviction. (*Carmell, supra,* 529 U.S. at pp. 1638-1640.) In *Carmell*, the court held that a law permitting conviction for child sexual abuse upon the victim's testimony alone, without corroboration as previously required, changed the quantum of evidence necessary to sustain a conviction and, thus, its retrospective application violated the ex post facto prohibition. (*Id.* at pp. 516, 530.)

Evidence Code section 1108 does not violate the proscription against the ex post facto application of laws because it does not authorize a conviction on less evidence than required when defendant's conduct occurred. The statute enlarges the class of admissible evidence; it does not alter the degree or amount of proof necessary to convict. The Ninth Circuit Court of Appeals has affirmed the constitutionality of Evidence Code section 1108 against a challenge under the ex post facto clause. (*Schroeder v. Tilton* (9th Cir. 2007) 493 F.3d 1083, 1086-1088 (*Schroeder*).) The court held that a California trial court that admitted evidence of prior sex offenses in a child molestation case, and the appellate court that affirmed the judgment of conviction, "did not err in concluding that [Evidence Code section] 1108 is an 'ordinary' rule of evidence that does not violate the Ex Post Facto Clause." (*Id.* at p. 1088.)

California cases are in accord. *People v. Flores* (2009) 176 Cal.App.4th 1171, 1176-1181, held that a comparable provision, Evidence Code section 1109 permitting

evidence of prior domestic violence, does not violate the ex post facto clause and, in doing so, approved the reasoning of *Schroeder*. Our Supreme Court, while not directly addressing the issue, has suggested that the admission of sexual offenses occurring before Evidence Code section 1108's effective date would not constitute an ex post facto violation. (*People v. Davis* (2009) 46 Cal.4th 539, 603, fn. 6.) We conclude that the admission of evidence of sexual offenses committed before Evidence Code section 1108 was enacted does not violate the constitutional prohibition against ex post facto laws.

C. *No abuse of discretion*

Defendant contends the trial court abused its discretion in admitting Sara's testimony of uncharged sexual offenses. As noted above, Evidence Code section 352 "gives the trial court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue time consumption or create substantial danger of undue prejudice, confusing the issues, or misleading the jury. In exercising this discretion as to a sexual offense, 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' [Citation.] The court's ruling under section 1108 is subject to review for abuse of discretion." (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

We agree with defendant that the prior offense was remote in time; it occurred about 34 years before trial. But "[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (*People v. Branch* (2001) 91 Cal.App.4th 274, 284.) As this court has observed, "[r]emoteness of prior offenses relates to 'the question of predisposition to commit the charged sexual offenses.' [Citation.] In theory, a substantial gap between the prior offenses and the

7

charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, . . . significant similarities between the prior and the charged offenses may 'balance[] out the remoteness.' [Citation.] Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*Id.* at p. 285.) A prior child sexual offense committed 30 years before the current offense was held admissible where the two offenses were substantially similar. (*Id.* at pp. 284-285; accord *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [prior 23-year-old rape conviction properly admitted where substantially similar to charged offense].)

There is a striking similarity between the prior and current offenses. In each instance, it was alleged that defendant abused his position of trust as a babysitter to young girls by reaching his hand under the girls' clothes and rubbing their vaginas. There was also evidence that, in each instance, defendant possessed a lock of hair as a keepsake. The substantial similarities between the prior and current offenses balance out the remoteness of the prior offense.

Defendant maintains there is a low degree of certainty that the prior offense was committed, noting that Sara did not report molestation to the police until 2010, after J.H. had accused him. Defendant's suggestion that Sara's allegation was a recent fabrication is refuted by evidence that Sara told her mother about the molestation and confronted defendant on the matter many years earlier, before J.H. was born. Defendant asserts we have only Sara's testimony to prove this prior disclosure but that is incorrect. Detective Porter testified that he spoke with Sara's mother and the mother confirmed that Sara told her about defendant's sexual abuse and defendant admitted to the police that Sara confronted him with charges of molestation. The trial court did not abuse its discretion in admitting Sara's testimony.

2. The trial court erred in failing to instruct the jury on the lesser included offense of a non-forcible lewd act.

Defendant contends the trial court failed in its duty to instruct the jury on the lesser included offense of a non-forcible lewd act. We agree.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) That obligation includes " 'giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present' " and there is substantial evidence to support the lesser included offense. (*Ibid.*) "[T]he rule protects both the defendant and the prosecution against a verdict contrary to the evidence, regardless of the parties' own perceptions of their strongest lines of attack or defense. The rule's purpose is not simply to guarantee some plausible third choice between conviction of the charged offense or acquittal, but to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence." (*Id.* at p. 161, italics omitted.)

"Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) A forcible lewd act is statutorily defined as a lewd act committed with force. Section 288, subdivision (b)(1) punishes "[a]ny person who commits [a lewd act] described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." A non-forcible lewd act under section 288, subdivision (a) is a lesser included offense of a forcible lewd act under section 288, subdivision (b)(1). (*People v. Ward* (1986) 188 Cal.App.3d 459, 472.)

The Attorney General asserts defendant "essentially objected to the trial court giving the lesser offense instruction" and, in so doing, invited the error and may not complain of it on appeal. (*People v. Eilers* (1991) 231 Cal.App.3d 288, 295-296.) The record does not bear out the assertion. Initially, counsel requested instruction on a non-forcible lewd act but, after consulting CALCRIM form jury instructions, came to the mistaken belief that a non-forcible lewd act was not a lesser included offense to a forcible

9

lewd act. CALCRIM No. 1111 lists the elements of a forcible lewd act. Its use notes list only three lesser included offenses: attempted lewd act by force, simple assault, and simple battery. (CALCRIM No. 1111 (2011 rev.).) Defense counsel told the court she read the form jury instruction use notes and concluded that "unfortunately, with these kind of charges they are all or nothing with the exception of the 240 [assault] and 242 [battery], which are lessers of Count 1" for a forcible lewd act. Counsel said she was "not in a legal position to ask" for instruction on any lesser included offenses apart from assault and battery. Counsel did not invite error; she made a mistake, and an understandable one given the omission of a non-forcible lewd act from the list of lesser included offenses in the CALCRIM use notes. Defense counsel did indicate that she would have liked the court to give the instruction on the lesser offense but did not believe the law entitled defendant to the instruction. Defense counsel was in error and the court was equally at fault in accepting counsel's incorrect understanding.

The Attorney General next claims there was no duty to instruct on a non-forcible lewd act because the offense was not supported by the evidence. "[T]he sua sponte duty to instruct on a lesser included offense arises if there is substantial evidence the defendant is guilty of the lesser offense, but not the charged offense. [Citation.] This standard requires instructions on a lesser included offense whenever ' "a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser, but not the greater, offense was committed. [Citations.] In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*People v. Breverman, supra,* 19 Cal.4th at p. 177, italics omitted.)

There is substantial evidence from which the jury could have concluded that defendant was guilty of the lesser offense alone. J.H. testified that, on different occasions, defendant touched her legs, chest and vagina. J.H. said that when defendant was touching her vagina he said, "If I told anybody, he would hurt me." When interviewed, J.H. indicated only that defendant told her the conduct "was a secret." The social worker did not remember J.H. ever saying that defendant "threatened to harm her physically."

10

Defendant admitted touching J.H.'s legs and chest, while denying sexual purpose, and insisted he never intentionally touched J.H.'s vagina.

This evidence permitted the jury to conclude that a non-forcible, rather than a forcible, lewd act occurred. The jury could find the uncontested touching of J.H's chest, unaccompanied by any threat, was a lewd act; find defendant touched J.H.'s vagina but did so without any threat of harm; or find there was a threat but it related to disclosure and was not used to accomplish the lewd act itself. In fact, as we discuss next, J.H.'s testimony about defendant threatening to hurt her if she told anyone about the molestation was insufficient to support a finding of a forcible lewd act. The evidence, at most, supported conviction for a non-forcible lewd act.

The trial court erred in failing to instruct the jury on this lesser included offense, and the error was prejudicial. There is a reasonable probability that, had the jury been properly instructed, defendant would have been convicted of committing a non-forcible lewd act. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We shall not, however, order a new trial with proper instructions because we also conclude, in the following discussion, that there is insufficient evidence to support the forcible lewd act conviction. Accordingly, we shall modify the judgment to reduce the conviction from a forcible lewd act to a non-forcible lewd act.

3. <u>There is insufficient evidence to support the finding that a lewd act was committed by the use of force, violence, duress, menace, or fear of immediate bodily injury</u>

The record here lacks substantial evidence of a *forcible* lewd act within the meaning of the statute. Section 288, subdivision (a) "makes criminal any lewd and lascivious act with a child under the age of 14 on the assumption and recognition that such a child is incapable of consenting to the act. Subdivision (b) prescribes a separate violation where such act is committed using force or duress." (*People v. Hecker* (1990) 219 Cal.App.3d 1238, 1249.) While recognizing that "all sex crimes with children are inherently coercive[,]" the Legislature has determined "that defendants who compound their commission of such acts by the use of violence or threats of violence should be singled out for more particularized deterrence." (*Id.* at p. 1251.)

Section 288, subdivision (b)(1) sets heightened penalties for a lewd act committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." "[C]onviction of forcible lewd acts on a minor requires evidence of 'physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " (*People v. Griffin* (2004) 33 Cal.4th 1015, 1026.) The record shows no such use of force.

The Attorney General argues there is sufficient evidence that defendant used fear of bodily injury and duress to accomplish lewd acts, and rests the argument on the following portion of J.H.'s trial testimony: "Q. Did you ever ask [defendant] not to touch you? [¶] A. Yes. [¶] Q. Do you remember how many times you asked him not to touch you? [¶] A. A lot. [¶] Q. Did [defendant] ever say anything when he was touching your vagina? [¶] A. Yes. [¶] Q. What did he say? [¶] A. If I told anybody, he would hurt me. [¶] Q. Did you believe he would hurt you? [¶] A. Yes. [¶] Q. Did you tell somebody? [¶] A. No. [¶] Q. Eventually did you tell somebody? [¶] A. Yes. [¶] Q. Who did you tell? [¶] A. My parents. [¶] Q. Why did you tell your parents? [¶] A. Because I was scared."

The testimony fails to establish that defendant used fear of immediate bodily injury or duress to accomplish the lewd act. The threatened harm was contingent, not immediate, and used to obtain the victim's silence *after* the lewd act was committed rather than to facilitate the act. Duress is defined as "the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]." (*People v. Soto* (2011) 51 Cal.4th 229, 246, fn. 9, italics omitted.) Duress "is measured by a purely objective standard." (*Id.* at p. 246.) The question is whether "the defendant used threats or intimidation to commit a lewd act" regardless of "how the victim subjectively perceived or responded to this behavior." (*Ibid.*)

The duress must be sufficient to cause a reasonable person to perform or acquiesce in the lewd act itself. (*People v. Leal* (2004) 33 Cal.4th 999, 1004.) "Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat.' " (*People v. Espinoza* (2002) 95 Cal.App.4th 1287,

12

1321.) A threat to impel silence following the act is distinct from a threat to impel submission to the act. A "threat of hardship directed at 'later disclosure of the sex acts and not [the failure to perform] the sex acts themselves' " does not, standing alone, establish duress under section 288, subdivision (b)(1). (*People v. Hecker, supra,* 219 Cal.App.3d at p. 1251, fn. 7.) A threat to "kick [the child's] ass" if she told anyone about the molestation was found to be a threat directed to "later *disclosure* of the sex acts and not the sex acts themselves." (*People v. Bergschneider* (1989) 211 Cal.App.3d 144, 154, fn. 8, disapproved on other grounds in *People v. Griffin, supra,* 33 Cal.4th at p. 1028.)

Duress is judged under the totality of the circumstances and threatened retribution may properly be considered when evaluating whether a defendant used duress to commit molestation. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14-15.) A defendant who threatens a child with violence if she reports molestation may obtain the child's submission to further molestation by an implied threat of violence if she resists. The circumstances here, however, fail to support an inference that defendant's threat to "hurt" J.H. if she "told anybody" was used to obtain J.H.'s submission to future molestation. J.H's testimony fails to specify any details about the threat, including when the threat was made. The record, viewed in its entirety, shows that defendant obtained J.H.'s submission by posing as a caring babysitter rather than by force, fear or duress. The record fails to support a finding of a forcible lewd act under section 288, subdivision (b)(1).

"[A]n appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense." (*People v. Bailey* (2012) 54 Cal.4th 740, 748.) We shall modify the judgment to reflect a conviction for the lesser included offense of a non-forcible lewd act under section 288, subdivision (a) and remand for resentencing.

4.  Sentencing issues

Defendant claims the trial court erred in its admission and consideration of certain information during sentencing. We address these claims to provide guidance to the trial court at resentencing.

13

Preliminarily, we note an error unremarked by the parties. The court sentenced defendant under the law operative at the time of sentencing rather than the law in effect at the time the crime was committed. The constitutional proscription of ex post facto laws "protect against the later adoption of a statute that inflicts greater punishment than the law in effect at the time of the commission of the crime." (*People v. Riskin* (2006) 143 Cal.App.4th 234, 244.) The jury found that defendant committed a forcible lewd act under section 288, subdivision (b)(1) sometime between August 1, 2007 and May 30, 2008. At that time, a violation was punishable by three, six, or eight years in prison. (Stats. 2004, ch. 823, § 7.) In 2010, the Legislature lengthened the sentence range to five, eight or ten years. (Stats. 2010, ch. 219, § 7.) This change in the law went unnoticed in the trial court. The probation officer reported that the applicable sentencing range was five, eight or ten years and the trial judge sentenced defendant to ten years as "the maximum term of confinement I can impose for the conviction in this case." In fact, the maximum term of confinement was eight years. The error is of no impact here because we are modifying the judgment to reduce the conviction from a forcible to a non-forcible lewd act. At the time of defendant's conduct, both offenses were punishable by the same range of three, six, or eight years in prison, although the use of force carried additional penal consequences. (Stats. 2004, ch. 823, § 7; see *People v. Soto, supra,* 51 Cal.4th at p. 237 & fn. 4 [comparing present and prior punishment under section 288].) At resentencing, the court shall use the sentencing scheme in effect at the time of the crime.

Defendant claims the court erred when it accepted a probation officer's report that included Sara's statement of prior, uncharged molestation by defendant and permitted Sara to speak at the sentencing hearing. There was no error. "Well-established decisional law in California allows the sentencing court to consider responsible out-of-court or unsworn statements concerning the circumstances of the crime and/or the characteristics of the defendant relevant to sentencing." (*People v. Mockel* (1990) 226 Cal.App.3d 581, 587.) Moreover, the court focused its attention upon Sara's sworn trial testimony and struck portions of Sara's statement going beyond the scope of her testimony.

Nor do we accept defendant's argument that the court wrongly considered defendant's lack of remorse when choosing the aggravated term. It is true, as defendant observes, that lack of remorse may not be used as a factor to aggravate a prison sentence where "the defendant has denied guilt and the evidence of guilt is conflicting." (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1319.) To do so would be to penalize a defendant for professing his innocence. We do not understand the court to have penalized defendant for maintaining his innocence. The court focused on defendant's admission of inappropriate conduct with J.H., while denying sexual intent, and found that defendant lacked "empathy," "understanding" and insight into the consequences of his admitted behavior. The court was entitled to consider these matters and may do so again at resentencing.

Defendant's contention that the court erred in concluding that aggravating factors outweighed mitigating factors need not be addressed at this juncture. The matter is being remanded for resentencing on the lesser offense of committing a non-forcible lewd act. At that time, defendant will have an opportunity to present his claim that an aggravated term is inappropriate under the established facts.

5. Attorney fees

As a final matter, defendant asserts the trial court failed to provide a hearing on his ability to pay $5,000 for legal assistance he received from the public defender. "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof." (§ 987.8, subd. (b).) The hearing may be held at the pronouncement of judgment or within six months of the pronouncement. (*Ibid.*)

At the outset of the case, the public defender questioned defendant's indigency. The court appointed the public defender to provide representation but warned defendant he could be compelled to pay for legal services if, at the conclusion of the case, it was found he had the ability to pay. At sentencing, the court informed defendant: "you have

15

the right to a hearing; however, at this time, I am imposing attorney's fees in the amount of $5,000." Defendant did not request the referenced hearing or otherwise object to the order.

The court should have held a hearing on defendant's ability to pay before ordering defendant to pay for legal services. However, defendant's failure to object in the trial court forfeits his challenge on appeal. A right "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. [Citation.] Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] Additionally, [i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided." (*People v. McCullough* (2013) 56 Cal.4th 589, 593, internal quotation marks omitted.) Under this reasoning, it has been held that a defendant may not contest a trial court's failure to determine his ability to pay a jail booking fee absent objection in the trial court. (*Id.* at pp. 591, 599.) The same reasoning applies to the assessment of legal fees at issue here.

Were we to conclude the claim was not forfeited, defendant's remedy would be remand for a hearing on his ability to pay. Defendant is mistaken in his assertion that section 987.8 imposes an absolute limit of six months from the pronouncement of judgment to conduct such a hearing. The time limit "was not intended to limit the authority of an appellate court to remand a case to the trial court for the correction of its error in failing to give a defendant the notice and hearing required by the statute." (*People v. Flores* (2003) 30 Cal.4th 1059, 1068.) We see no basis to relieve defendant of his forfeiture and remand the case for an assessment of defendant's ability to pay. His complaint rests upon the court's procedural error in failing to hold a hearing rather than a substantive claim that he is unable to pay the assessment. The Attorney General points to

16

evidence in the record that defendant does have the ability to pay and defendant's briefing does not dispute that evidence.

## Disposition

The judgment is modified to reduce the conviction on count one from a forcible lewd act under section 288, subdivision (b)(1) to a non-forcible lewd act under section 288, subdivision (a). As modified, the judgment is affirmed. The case is remanded for resentencing.

_____
Pollak, J.

We concur:

_____
McGuiness, P.J.

_____
Jenkins, J.

17