Filed 9/27/22 P. v. Smith CA2/5

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FREDERICK A. SMITH,<br><br>    Defendant and Appellant. | B311459<br><br>(Los Angeles County<br>Super. Ct. No. A634331)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING PETITION<br>FOR REHEARING**<br>[There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on September 2, 2022, is modified as follows:

1. On page 2, second paragraph, line 8, after the word "and" add "/or" so it now reads "and/or".

2. On page 5, second paragraph, lines 1 and 5, delete "The prosecutor" and replace with "Defense counsel".

3. On page 11, last paragraph, line 7, after the word "spent" insert the word "almost" so it reads, "spent almost".

4. On page 14, first full paragraph, after the complete citation to *People v. Blackburn*, after the closed parentheses, add as

footnote 4 the following footnote, which will require renumbering of all the subsequent footnotes:

> [4] We find no ambiguity in the statute, thus dispensing with one of appellant's contentions on appeal. (*People v. Howard* (2020) 50 Cal.App.5th 727, 737 (*Howard*).)

5. On page 18, replace the full citation for *People v. Howard* with: (*Howard, supra,* 50 Cal.App.5th at p. 742.)

6. On page 18, renumbered footnote 6, line 5, before the fragment "be absurd" delete the word "not".

7. On page 28, first full paragraph, line 2, after the word "and" add "/or" so it now reads "and/or".

There is no change in judgment.

The petition for rehearing is denied.

RUBIN, P. J.          BAKER, J.          MOOR, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B311459 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A634331) |
| v. | |
| FREDERICK A. SMITH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Clay Jacke, II, Judge.  Affirmed as modified.

William L. Heyman for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1986, appellant pleaded guilty to murder and was sentenced to 15 years to life in prison. In 2019, appellant (still incarcerated) filed a petition for resentencing under former Penal Code section 1170.95 (now § 1172.6).[1] The trial court vacated appellant's murder conviction and resentenced him to one year and four months for attempted robbery (crediting him with time served), plus a two-year parole term. The court imposed a $300 restitution fine, and a stayed $300 parole revocation fine.

Appealing from the resentencing order, appellant argues the court violated section 1172.6 and his constitutional rights by imposing a sentence for a crime that was dismissed as a part of a plea bargain and never found true by a jury. He also asserts insufficient evidence supported the attempted robbery conviction, and that imposition of the parole term constituted an abuse of discretion and violated his constitutional right to be free from cruel and unusual punishment. Finally, he contends imposition of a parole revocation fine violated ex post facto principles. We strike the parole revocation fine but otherwise affirm the trial court's resentencing order.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Murder

On the night of November 6, 1985, four men (one of whom appellant knew was carrying a gun) and appellant agreed to rob someone "to make some fast money." The five men drove around in a station wagon for five to ten minutes looking for a victim

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We refer to the statute by its current numeration.

All further undesignated statutory references are to the Penal Code.

2

before they spotted Stephanie Marry, who was sitting alone in a vehicle in front of a liquor store. Marry's friends, Blade Mason and Richie Collins, were inside the liquor store. The five men parked their station wagon, and two of them walked over to and entered the vehicle in which Marry was sitting. At the time, Marry, who was waiting for Mason and Collins to return, was alone in the car, which was owned by Collins. The two suspects demanded the car key from Marry, who did not have one. When Collins and Mason left the liquor store, the two suspects exited Collins's vehicle, taking Mason's radio and Collins's coat.

Collins and the suspects argued; one of the suspects asserted their gang affiliation. Meanwhile, appellant, who was not part of the initial altercation, exited the station wagon and walked toward Collins's car because he saw that Mason was wearing a hat that appellant wanted. Appellant approached Mason and tried to take his hat, but failed.

One of the suspects (not appellant) then shot Collins. The suspects ran to the station wagon. A police patrol vehicle stopped the station wagon before it could escape the crime scene. Collins died from the gunshot wound.

## 2. *The Preliminary Hearing*

At appellant's December 5, 1985 preliminary hearing, Marry and the police detective who interviewed appellant testified. Following their testimony, defense counsel unsuccessfully moved to dismiss the charges.[2]

### a. **Marry's Testimony**

Marry testified that on November 6, 1985, at 10:15 p.m., she was sitting in Collins's car outside a liquor store, where Collins and Mason were shopping. Two men got out of a station

---

[2]     The record on appeal does not contain the complaint.

wagon, approached Collins's car, and got in the car with Marry. Both men demanded the car key, and Marry told them she did not have it.

When Collins and Mason came out of the liquor store, one of the men took Mason's radio from the backseat and then exited Collins's car. The other man, also getting out of the car, took Collins's coat and put it on. Five to ten minutes lapsed from the time the men approached and got into Collins's car to the time they exited the vehicle.

Marry stated that the first man asked Collins three times if the vehicle belonged to him. Collins, who was standing near the driver's side, repeatedly responded "yes." The second man went on top of the vehicle on the passenger side and yelled, " 'This is bounty hunters here, Blood.' " The second man then went to the driver's side of the vehicle where Collins stood. Collins told the second man, " 'All right, man, all right, man. I am from the neighborhood. I am from the neighborhood. I don't gang bang. I don't gang bang.' "

Marry testified that during the altercation, Collins kept trying to get his coat back from the man who had taken it, and Mason told Collins to let the guy have it. Marry attempted to get out of Collins's car on the passenger side, but the first man (who had the gun) told her to get back inside. Marry then attempted to exit on the driver's side, where Collins was standing, and Collins told her to get back in the car. When Marry looked again to the passenger side, she watched the first man take out the gun and shoot Collins. Collins ran and collapsed in front of the liquor store. Marry observed the men flee to the station wagon. Before they could get away, they were caught by police.

Marry also testified that before the shooting occurred, just after the two men got out of Collins's car, appellant walked over from the station wagon and started talking to Mason. Appellant talked to Mason at the same time that the other two men were talking to Collins and Mason. Marry testified that she could not hear what appellant said, but appellant's conversation with Mason appeared to be "normal." The conversation between appellant and Mason lasted about five minutes, and ended when the other man (Melvin Smith, Sr.) shot Collins and appellant fled to the station wagon. Marry stated that the altercation between the two men and Collins and Mason was separate from the conversation between appellant and Mason.

The prosecutor asked, "In your opinion – I am going to ask you prior to the shot you heard go off – did you believe that this person [appellant] was attempting to rob [Mason] from what you could see?" Marry answered: "No. He just wanted his hat, tried to take his hat." The prosecutor then asked, "How do you know he was trying to take his hat?" Marry responded, "[Mason] told me." Defense counsel then moved to strike Marry's statements as hearsay, and the trial court struck her answers to the line of questioning.

### b.    The Detective's Testimony

Detective Michael McDonagh testified that he was assigned to investigate the November 6, 1985 robbery and homicide. The detective stated appellant was arrested about two minutes after the shooting, and then transported to the police station. At 11:45 p.m., the detective spoke to appellant for four to five minutes at the station and then the detective went to the crime scene. Hours later, at 4:30 a.m., the detective interviewed appellant; the interrogation was recorded.

5

The detective advised appellant of his constitutional rights, including his right to remain silent and to have an attorney present. Appellant acknowledged he understood his rights, and agreed to speak to the detective. In the taped conversation, appellant recapitulated what he had told the detective hours earlier during their first discussion.

The 14-minute tape recording of the interview was admitted into evidence and played at appellant's preliminary hearing. The tape recording apparently no longer exists in electronic or transcript form. The detective did not testify about the contents of the recording at the preliminary hearing.

### c. Argument by Counsel

At the close of the preliminary hearing, appellant's counsel moved to dismiss the robbery and murder charges. Counsel argued there was insufficient evidence to support the charges because appellant's interaction with Mason was separate from the robbery and murder: "It appears . . . that what was going on . . . is that two different activities were happening. Apparently one group decided they would do one thing. This man [appellant] was in the car. Apparently [appellant] looks up and sees a hat. [Appellant] eventually joins the first group who apparently had been over at that location, that location being the area of the car, for a period of time prior to his arrival. [¶] Even when [appellant] arrived, if the witness is to be believed, he did not take part in what the other people were doing. But by [appellant's] taped testimony it appears he decided he wanted a hat. And while he was in the process of taking that hat from another person, Mr. Collins was shot."

In response, the prosecutor asserted appellant was liable under an aiding and abetting theory, or on a conspiracy theory

6

because he had agreed to participate in the robbery and knew one of the men had a gun.

The magistrate denied the motion to dismiss and held appellant to answer for murder, two robberies, attempted robbery, and, on all counts, a principal armed with a firearm enhancement.

3. ***The Information and Appellant's Plea***

On December 19, 1985, the district attorney filed an information charging appellant with the murder and robbery of Collins, the robbery of Mason, and the attempted robbery of Marry. As to all four counts, the district attorney alleged that a principal was armed with a firearm in the commission and attempted commission of the offenses.

On February 26, 1986, appellant pled guilty to murder and admitted the principal firearm allegation. On April 14, 1986, the trial court found the murder to be in the second degree and sentenced appellant to 15 years to life in state prison. The court imposed and stayed a one-year term for the principal firearm enhancement. The court dismissed the remaining counts.

4. ***Section 1172.6 Petition and Vacatur of Appellant's Murder Conviction***

Some 32 years later, on January 3, 2019, appellant (still incarcerated for the Collins murder) filed a section 1172.6 petition for resentencing. On January 31, 2019, the superior court asked the Office of the District Attorney and/or the Office of the Attorney General to file an informal letter response.

On July 29, 2019, the district attorney filed her response. The prosecutor argued, among other things, that appellant was ineligible for relief because he failed to make the requisite prima facie showing and, even under current law, he would be guilty of

7

murder both as a major participant in the underlying felony who acted with reckless indifference to life and under the theory of implied malice. The district attorney's response included three exhibits: (1) trial court documents related to appellant's plea and sentencing; (2) the preliminary hearing transcripts of both appellant and codefendant Melvin Smith, Jr.; and (3) the police report from the murder/robbery.[3]

The police report included a description of appellant's statements to police: "Suspect Fredrick Smith was admonished of his rights which he acknowledged and waived. The suspect stated that he was at suspect Ronald Smith's house when the other three suspects arrived in the station wagon. Melvin Jr and Melvin Sr exit the vehicle and enter the residence. The suspect got into the vehicle with Subj Anderson who showed him the gun which he examined and determined to be a real gun. A few minutes later the other three suspects get into the vehicle. All five of the suspects agree to rob someone to make some fast money. Smith stated that they drove around for five to ten minutes looking for someone to rob and talking about robbing people. He stated that they selected a likely victim but changed their mind for some reason. Smith stated that when they saw victim Marry alone in her vehicle they decided to rob her. They parked ahead of the victim's vehicle and Melvin Sr, Melvin Jr and Anderson approached the victim. He stated that when he saw victim Mason returning to the vehicle he saw the victim's hat and decided that he wanted it. He stated that he approached the

---

[3]     In addition to appellant Frederick Smith and Melvin Smith, Jr., three other men were arrested: Melvin Smith, Sr., Ronald Smith, and Arvarteman Anderson. Melvin Smith, Sr. was the shooter.

8

victim and tried to take the hat but the victim backed away.  He stated that he saw Smith Sr pull the gun out and shoot the victim."

On August 20, 2019, after reviewing appellant's petition and the district attorney's response, the trial court ordered the district attorney to show cause why the relief requested in the petition should not be granted, set a hearing date, and appointed counsel for appellant.

On February 10, 2020, appellant filed a reply.  The reply attached as exhibits the detective's police report of the murder/robbery (quoted in part above), and appellant's preliminary hearing transcript.  Appellant argued there was no evidence of implied malice or intent to kill.

On July 30, and August 28, 2020, the petition was heard and argued.  The court concluded the district attorney failed to meet its burden to prove beyond a reasonable doubt that appellant was ineligible for resentencing.  Relying on the preliminary hearing transcripts and the police report, the court concluded appellant had been prosecuted under the felony murder rule, and under current law, could not be convicted of murder.

When the district attorney requested the court to clarify how it relied on its exhibits, the court stated it had examined and relied on the transcripts and police report.  The court elaborated that to the extent the police reports included statements by all five suspects, the court placed less weight on the police report than the information in the preliminary hearing transcripts.

Defense counsel argued that the legislative history of section 1172.6 indicated police reports were evidence, but the trial court was not obligated to accept the content of the reports

as true and the court was entitled to determine what weight to give to such evidence. Defense counsel commented, "We all know that police reports have some value. The value that one gives to them is subject to that one's interpretation." The prosecution pointed out that the police report was evidence that had been presented to the court, which appellant did not contest. The trial court explained, "[B]ecause the preliminary hearing wouldn't disclose everything that both sides argued were the facts . . . it had to be gleaned from the police reports."

Counsel then made the argument that forms the crux of this appeal: Because appellant had pled guilty to murder and the remaining charged counts had been dismissed, there were no other counts on which to resentence appellant under section 1172.6. Defense counsel requested the trial court vacate appellant's murder conviction and immediately release him from prison. Counsel claimed the trial court could not resentence appellant on crimes for which no jury had previously found him guilty or which appellant had not admitted.

The district attorney argued that if the trial court vacated appellant's murder conviction, then it should resentence appellant to robbery or attempted robbery, and the principal armed with a firearm enhancement, as charged in the information.

After hearing argument from both parties, the trial court vacated appellant's murder conviction, released appellant on his own recognizance, and calendared the matter for resentencing.

### 5. *Resentencing Appellant for Attempted Robbery*

On November 5, 2020, the district attorney filed a sentencing motion, requesting that appellant be resentenced on two counts of robbery and one count of attempted robbery, plus

the armed principal enhancement. The motion requested three years of parole. In support of the parole request, the district attorney attached transcripts from appellant's parole hearings.

On January 8, 2021, the court heard argument from appellant and the district attorney. Appellant asserted he could not be resentenced on any counts under section 1172.6 subdivision (d)(1) or (e) because those parts of the statute that discussed resentencing did not address a situation where the remaining counts had been dismissed and the target offense was already charged. Defense counsel also argued there was insufficient evidence to support a robbery or attempted robbery conviction. The district attorney argued defense counsel's construction of section 1172.6 was illogical and would result in the inability to resentence defendants who had plea deals.

After indicating that it was uncomfortable sentencing appellant to a charge that was alleged but not proven to a jury or admitted, the court tentatively ruled appellant would be resentenced to attempted robbery. The court stated that its ruling was consistent with its factual finding that appellant's actions in attempting to take Mason's hat were separate from the murder and robberies perpetrated by the other men.

The trial court tentatively ruled that appellant would be subject to two years of parole. The court's ruling was based on its review of the parole hearing transcripts submitted by the district attorney. The court found appellant had made tremendous rehabilitative progress in prison, but he was currently 53 years old, and had been just 18 years old when convicted. As appellant had spent his entire adult life in prison, he would benefit from the guidance provided by parole.

Defense counsel initially asserted appellant would be harassed on parole and that parole was contrary to the district attorney's current sentencing policies. Counsel then argued parole should be stayed pending appeal to resolve the underlying question of whether the trial court erred by resentencing appellant to attempted robbery. The court ordered the parties to meet and confer and continued the matter to resolve whether parole should be stayed pending appeal.

On January 22, 2021, the court heard more argument regarding parole and heard defense counsel read a letter from appellant's wife, a former prison guard. Defense counsel asked the court to stay the imposition of parole, because appellant had no place to live in Los Angeles where he would likely be paroled, appellant wished to live in Kings County at his wife's home, the hardships upon him with having parole imposed far outweighed any societal danger, his wife was a prison guard and law abiding citizen, and defense counsel did not believe appellant was at risk of recidivism as long as he was living with his wife as a term or condition of his release. The district attorney responded that the parole process is intended to help appellant reintegrate into society after he has been away so long, and that parole was prudent for the safety of the community. The district attorney proposed transferring appellant's parole to King's County.

The court reiterated its concern: "because [appellant] has been in prison so long and he is just coming out – I mean, he went out a boy, and he's coming out as – . . . a man in his 50's. . . . My concern is that he may, while out and about, run into some stressors. . . . So I do think he needs supervision." The court asked all counsel to research whether appellant could reside in

12

Kings County when placed on parole out of the Los Angeles Superior Court.

On March 5, 2021, the parties informed the court they had resolved the parole residence issue and that appellant would be permitted to live in Kings County. The trial court found there was an attempted robbery, denied probation, and sentenced appellant to the lower term of 16 months in state prison for attempted robbery, against which appellant had credit for time served (35 years). The trial court imposed a parole term of two years and a $300 parole revocation fine, which it ordered stayed unless parole was revoked.

Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant argues the court violated section 1172.6 and his constitutional rights by redesignating his murder conviction to attempted robbery since both the attempted robbery and the two robbery charges were dismissed as a part of his guilty plea and not found true by a jury. He also asserts insufficient evidence supported the attempted robbery conviction. Appellant also contends the court abused its discretion and violated his constitutional right to be free from cruel and unusual punishment by placing him on parole. Lastly, appellant asserts imposition of a parole revocation fine violated the ex post facto clause. We address appellant's redesignation arguments first, followed by his contentions regarding parole and the parole revocation fine.

### 1.    The Court Did Not Err in Redesignating the Murder Conviction as Attempted Robbery

Appellant asserts he cannot be resentenced to another crime because of the language of section 1172.6. He also

13

contends that in redesignating the murder conviction as attempted robbery, the court violated his rights to trial by jury and due process.  Appellant's claims require us to interpret the statute and evaluate any constitutional conflicts.

"We review de novo questions of statutory construction. [Citation.]  In doing so, ' "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' [Citation.]  We begin with the text, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' [Citation.]  'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.' " (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.)  " ' "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.  [Citation.]  Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]." ' " (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 544.)

We review constitutional challenges to the statute de novo. (*People v. Alaybue* (2020) 51 Cal.App.5th 207, 214.)

a.    **Resentencing Under Section 1172.6**

"Senate Bill [No.]1437, which enacted various Penal Code amendments that became effective January 1, 2019, significantly altered liability for murder under the theories of felony murder and the natural and probable consequences doctrine." (*People v. Silva* (2021) 72 Cal.App.5th 505, 516 (*Silva*).)  The bill's objective was " 'to ensure that murder liability is not imposed on a person

14

who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)  Senate Bill No. 1437 created section 1170.95 (now section 1172.6), which sets "forth a procedure by which nonkillers convicted [of murder] under the old law could have their convictions vacated and could be resentenced under the new law." (*Silva, supra,* at p. 516.)

"Typically, once a petitioner makes a prima facie showing of eligibility for relief [under section 1172.6], the judge issues an order to show cause, and an evidentiary hearing is held in which the prosecution has the burden of proof beyond a reasonable doubt that the petitioner is ineligible for relief under the statute. (§ [1172.6], subd. (d)(3).)  At the eligibility hearing, both the prosecution and the defense may rely on the record of conviction or may introduce new evidence or both." (*Silva, supra,* 72 Cal.App.5th at p. 516.)

Under section 1172.6, subdivision (d)(1), "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence."  Subdivision (d)(3) states that when the court determines the petitioner is entitled to relief, "the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."

However, section 1172.6 also provides for resentencing the petitioner to a "target offense" or "underlying felony" not

originally charged. Subdivision (e) of the statute states: "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged."

### b. Section 1172.6, Subdivision (d) Allows for Resentencing Appellant on Attempted Robbery

Appellant argues he cannot be resentenced to attempted robbery because section 1172.6 only allows the court to redesignate the murder to a remaining charge (pursuant to subdivision (d)(3)) or an uncharged crime (under subdivision (e)). Specifically, "there were no 'remaining counts' under subdivision (d)(1) of [section 1172.6] and there were no 'remaining charges' under subdivision (d)(3) of that section, because after appellant pleaded guilty to murder in this case in count 1, the remaining counts, namely, counts 2, 3, and 4, were dismissed by the trial court in furtherance of justice [citation]. Thus, there was no count or charge remaining for appellant to be resentenced on." Appellant contends "Subdivision (e) of [section 1172.6] does not apply in this case, because one of its stated preconditions, that the target offense not have been charged (§ [1172.6], subd. (e)), was not satisfied, because in this case, the target offense, robbery, was charged, in counts 2, 3, and 4 [citation]."

We agree that resentencing here does not fall under subdivision (e) because appellant was charged with Mason's robbery.[4] However, appellant's proposed interpretation of

---

[4] Defendant was charged with the attempted robbery of Marry (count 4) and the robbery of Mason (count 2). The trial

16

subdivision (d), which hinges on the word "remaining," is inconsistent with the principles of statutory construction.

As we have observed, section 1172.6, subdivision (d)(1) directs the trial court to resentence "the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced. . . ." Subdivision (d)(3) likewise states "the petitioner shall be resentenced on the remaining charges." "Remaining counts" and "remaining charges" are not defined by the statute. Appellant states no counts/charges "remain" here because the other charges were dismissed as part of his plea deal. We disagree.

Consistent with the legislature's objective and a holistic reading of the statute, "remaining charges" and "remaining counts" must refer to the non-murder counts in the complaint or information that were not the murder charge, regardless of whether they were dismissed as a result of a plea deal. We conclude 1172.6, subdivision (d) allows resentencing on counts charged but never litigated and dismissed, like the attempted robbery at issue here.[5]

_____

court resentenced defendant on attempted robbery of Mason, the lesser included offense of count 2. (See § 1181, subd. (6).)

[5] Appellant argues our construction is too broad because remaining counts/charges could also encompass "counts . . . which, during a trial, were dropped because it had become apparent there was insufficient evidence to support them, and/or on which after a trial, the defendant was found not guilty or on which, in the case of a jury trial, the jury was hung, which would not be absurd." We do not see how appellant's scenario could materialize because the trial court may only redesignate murder to another offense where sufficient evidence supports the remaining count. (See *Silva, supra,* 72 Cal.App.5th at pp. 528–

In drafting subdivisions (d) and (e) the Legislature sought to capture situations where the underlying felonies both were and were not charged. Excluding defendants who pled guilty to one count in exchange for dismissal of other counts from subdivision (d)'s ambit can only be accomplished by an interpretation of the word remaining that is both nonsensical and unsupported by the legislative purpose. If a defendant can be resentenced on an uncharged count under subdivision (e), it makes no sense that he cannot be sentenced on a dismissed count that at least was charged.

Appellant's narrow interpretation is not supported by the legislative intent of section 1172.6. It is well established that "the purpose of section [1172.6] is to punish a defendant commensurate with his individual culpability." (*People v. Howard* (2020) 50 Cal.App.5th 727, 742 (*Howard*).) "Senate Bill [No.] 1437 also 'reflects an intent that sentences imposed on individuals with the same criminal history be the same, regardless of whether they are being sentenced or resentenced.' " (*People v. Cooper* (2022) 77 Cal.App.5th 393, 415.) A " 'successful Senate Bill [No.] 1437 petitioner's criminal culpability does not simply evaporate; a meritorious section [1172.6] petition is not a get-out-of-jail free card.' " (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 256.) Appellant essentially proposes a construction where any defendant who entered into a plea deal

---

529.) Where a defendant is found not guilty of a charge after it is actually litigated and decided, by definition there was insufficient evidence of the "remaining" count and issue preclusion would prevent relitigation of that charge. (See *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 433, review granted Aug. 18, 2021, S269792.)

for murder and the trial court dismissed the underlying felony or felonies as part of the bargain could never be resentenced. Effectively that defendant would receive the get-out-jail-free-card. We do not adopt a statutory construction would lead to absurd results. (See *People v. Cook* (2015) 60 Cal.4th 922, 927 [A "fundamental principle of statutory construction is that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."].)

### c. The Court Did Not Violate Appellant's Right to Trial By Jury

Appellant next argues the court violated "his right to due process under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution and . . . appellant's rights under the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution to be confronted by the witnesses against him and under that Sixth Amendment and article I, section 16 of the California Constitution to a trial by jury." We first address appellant's right to trial by jury.[6]

We agree with and adopt the First District Court of Appeal's analysis in *Howard, supra,* 50 Cal.App.5th 727 and *Silva, supra*, 72 Cal.App.5th 505. Both cases involved sentencing the defendant for crimes neither found true by a jury nor admitted by the defendant. Both defendants appealed their

---

[6] We do not address appellant's right to confrontation as appellant does not develop the argument. (*People v. Abarca* (2016) 2 Cal.App.5th 475, 480 [" 'An appellate court is not required to examine undeveloped claims, nor to make arguments for parties.' "])

19

convictions based on violation of their right to trial by jury. (*Howard,* at pp. 732-733, 736; *Silva,* at pp. 509-510.)

The *Howard* court affirmed the redesignation, stating "the plain language of section [1172.6], subdivision (e) contemplates a situation where . . . the underlying felony was not charged. It follows that where the underlying felony is not charged, there will be no jury instruction or verdict form." (*Howard, supra,* 50 Cal.App.5th at p. 738.) The appellate court explained there was no constitutional violation: "The retroactive relief provided by section [1172.6] reflects an act of lenity by the Legislature 'that does not implicate defendants' Sixth Amendment rights.' [Citations.] [¶] Here, the process by which a trial court redesignates the underlying felony pursuant to section [1172.6], subdivision (e) does not implicate Howard's constitutional jury trial right under *Apprendi v. New Jersey* (2000) 530 U.S. 466, . . . or *Alleyne v. United States* (2013) 570 U.S. 99. . . . The redesignation does not increase Howard's sentence." (*Id.* at p. 740.)

The *Silva* court agreed, adopting *Howard*'s constitutional analysis. (*Silva, supra,* 72 Cal.App.5th at p. 520; see also *People v. James* (2021) 63 Cal.App.5th 604, 610–611 [defendant was not entitled to jury trial to determine whether he was eligible for relief under section 1172.6]; see also *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [The "retroactive relief they are afforded by Senate Bill [No.] 1437 is not subject to Sixth Amendment analysis."].)

Without citation to case law, appellant argues *Howard*'s analysis is erroneous because "requiring the superior court to resentence a defendant on a strike offense that he did not plead guilty or nolo contendere to and was not convicted of at a trial by

jury or by court is not an act of lenity." We disagree and side with our sister courts.

Appellant's myopic view of lenity ignores the clemency afforded by the statutory scheme. Without section 1172.6, appellant would still stand convicted of murder and in all likelihood, remain in custody. It is the entire process established by section 1172.6 – from vacatur to resentencing – that is the act of lenity. Finally both lenity and defendant's constitutional rights are preserved by section 1172.6, subdivision (d)(1)'s mandate that no resentence can be for a term "greater than the initial sentence."

### d. Appellant Forfeited His Due Process Arguments

Almost in passing as part of his Sixth Amendment argument, appellant claims his right to due process also has been violated by the court's redesignation of his conviction, but fails to develop this argument or cite any authority to support his position. Accordingly, we treat the claim as forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

That said, even if we were to address due process on the merits, we would conclude there was no due process violation for the same reasons stated in *Silva* and *Howard*. (*Silva, supra,* 72 Cal.App.5th at pp. 520-524; *Howard, supra,* 50 Cal.App.5th at p. 740.) Appellant had ample notice and opportunity to be heard on the redesignation of his murder conviction. (*Silva,* at pp. 523-524.)

### e. Substantial Evidence Supports the Attempted Robbery Redesignation

Appellant contends there was insufficient competent evidence of attempted robbery of Mason. The only admissible evidence, he claims, is found in the preliminary transcript and that does not establish an attempted robbery. He continues: When the court considered the police report as part of its resentencing, it was relying on inadmissible evidence.

#### (1) Standard of Review

Section 1172.6 specifies the burden of proof at the vacatur stage of the hearing but not at the resentencing stage. (§ 1172.6, subd. (d)(3) ["the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019"].) Appellant fails to address the issue and respondent argues that the court must be satisfied only by a preponderance of the evidence that the crimes subject to resentencing took place. We need not decide the issue, as we follow *Silva*'s lead in concluding "that on any standard—preponderance of the evidence, clear and convincing proof, or proof beyond a reasonable doubt—" substantial evidence supports the trial court's attempted robbery finding. (*Silva, supra,* 72 Cal.App.5th at p. 527.)

On appeal, we determine whether "evidence that is reasonable, credible, and of solid value" supports the trial court's findings. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) In doing so, view the evidence "in the light most favorable to the prosecution and presume in support of the [findings] the existence of every fact the [court] could reasonably have deduced

from the evidence." (*Ibid.*) We reverse only if " 'it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the [court's findings]." (*Ibid.*)

### (2) Elements of Attempted Robbery

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) A criminal attempt occurs when there is a specific intent to commit the crime and a direct but ineffectual act done towards its commission. (§ 21a.) "The overt act element of attempt requires conduct that goes beyond 'mere preparation' and 'show[s] that [defendant] is putting his or her plan into action.' " (*People v. Watkins* (2012) 55 Cal.4th 999, 1021.) "That act need not, however, be the last proximate or ultimate step toward commission of the crime." (*People v. Bonner* (2000) 80 Cal.App.4th 759, 764.) "Where the intent to commit the crime is clearly shown, an act done toward the commission of the crime may be sufficient for an attempt even though that same act would be insufficient if the intent is not as clearly shown." (*Ibid.*)

### (3) Substantial Evidence Supported the Attempted Robbery Redesignation

We conclude substantial evidence supported the trial court's redesignation of the murder conviction as attempted robbery of Mason. Marry's preliminary hearing testimony and the police report containing a summary of appellant's recorded statement established all the elements outlined above.

The police report showed appellant agreed with four other men to rob someone to make money. The report documented that appellant admitted that, during the incident, he spotted victim Mason approached his victim, and tried to take the victim's hat

23

but failed as Mason backed away. This evidence establishes appellant's specific intent to commit the robbery and shows that appellant committed overt, but ineffectual, acts towards achieving the robbery.

Marry's testimony established that the attempted robbery was accomplished by means fear. Marry testified that appellant came out of the same station wagon after the two men had already taken Mason's radio and Collins's coat. Appellant approached Mason and tried to take Mason's hat while the two men accosted Mason and Collins. One of the men threatened: " 'This is bounty hunters here, Blood.' " The group's aggressive behavior, the gang territorial claim, and the fact Mason urged Collins to let the men have the coat provide substantial evidence that the attempted robbery was predicated on fear.

### (4) Appellant Forfeited His Objections to the Court's Reliance on the Police Report

Appellant contends that the trial court was not permitted to consider on resentencing the police report because it did not appear to have been signed by the officer who prepared it, was not authenticated, and was not used or referred to at the preliminary hearing. Appellant raised none of these objections below. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 696 [defendant forfeited challenge to admissibility of parole risk assessment and parole hearing transcript by failing to object at section 1172.6, subdivision (d)(3) hearing].) Quite to the contrary, appellant attached the police report to his reply papers. He provided a factual summary "[a]ccording to the police reports, witness statements, and the preliminary hearing transcript" and asked the court to take "judicial notice of the facts as contained in the police report and preliminary transcript." (See § 1172.6 ["The

prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."].) At the July 30, 2020 hearing, appellant's counsel relied on the police report to argue that appellant only asked Mason for a hat and that he had nothing to do with robbing Collins (the murder victim). He then invited the very error of which he now complains: Counsel said the trial court could consider the police report, suggesting only that the court should give the report little weight.[7]

### (5) Ineffective Assistance of Counsel is Inapplicable

Appellant argues his counsel rendered constitutionally ineffective assistance by failing to object to the police report. However, there is no general constitutional right to the effective assistance of counsel in postconviction proceedings. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1032, review granted Oct. 14, 2020, S264278 (*Cole*); see *People v. Boyer* (2006) 38 Cal.4th 412, 489 [no constitutional right to effective assistance of counsel in habeas review].)

---

[7] Defense counsel stated: "The other thing I want to add, your Honor: I have read the legislative history of the statute. Nowhere in the legislative history does it say the court has to accept the police reports as being true. It says it's a piece of evidence that either side can argue what weight the court should give it. [¶] . . . [¶] We all know police reports have some value. The value that one gives to them is subject to that one's interpretation. [¶] Nowhere is it in the statute, and this is very important, does it say a magistrate or a judge is bound by what is written in a police report. [¶] . . . [¶] So the People's argument that there is a police report is a beautiful thing, but the statute doesn't say that if the police report says X, that you have to accept it."

25

## 2.  *No Error Imposing Parole*

At the time appellant was resentenced, former section 1170.95, subdivision (g) allowed the court to impose up to three years of parole supervision.  Senate Bill No. 775 reduced the parole period to a maximum of two years.  (§ 1172.6, subd. (h).)  Appellant contends that imposition of two years of parole constituted an abuse of discretion and violated his right to be free from cruel and unusual punishment.  The Attorney General counters that even though appellant's long sentence was retrospectively not warranted, the trial court acted reasonably when it found that parole would be helpful to the successful reintegration to society of someone held long in custody.

### a.    The Trial Court Did Not Abuse Its Discretion by Imposing Parole

We review the trial court's sentencing decision for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." '  [Citations.]  Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " '  [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so

26

irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)

Appellant asserts imposing any parole was an abuse of discretion for several reasons: First, by the time of resentencing "appellant had already been out in the community on his own recognizance for apparently around six months . . . apparently without incident."[8] Second, "appellant had been practicing to reintegrate into society for 19 years, while in prison, as a result of his eight parole consideration hearings" between 1995 and 2019. Appellant explains: "at each of those eight hearings, appellant's interrogators explained to him what he needed to do to prepare to reintegrate into society [citations]. Presumably, appellant took that advice to heart at each of those hearings, so that he might have a better chance of being granted parole the next time. It is inconceivable that two years of parole could do any more for appellant in terms of helping him reintegrate into society than the advice he received during his eight parole consideration hearings over the 19-year period." Third, his release from custody meant that appellant would "be living with his wife, a former prison guard, and he was 53 years old, a different person than he was at the time of the offense, when he was 18 years old."

We acknowledge these arguments carry some force, and the trial court could have reasonably accepted them and forgone any parole period. But that does not mean that the trial court's actual order was an abuse of discretion. An accepted objective parole is to "provide 'supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society.' " (*People v. Wilson* (2020)

---

[8]    The court released appellant on his own recognizance on August 28, 2020, and imposed parole on March 5, 2021.

53 Cal.App.5th 42, 50–51; *In re Roberts* (2005) 36 Cal.4th 575, 590 [Parole "assists in returning the prisoner to society while simultaneously affording some measure of continuing protection to society."].) As the trial court pointed out, appellant had spent his entire adult life in prison, entering custody at age 18. The circumstances of his resentencing and release notwithstanding, the trial court could have reasonably concluded that a prisoner incarcerated for 35 years would benefit from parole supervision and counseling. Nor has appellant provided a cohesive argument that his counsel was ineffective in connection with the imposition of parole.

### b. Appellant Forfeited His Eighth Amendment Challenge to Parole

Appellant next contends his two-year parole constitutes cruel and unusual punishment under both state and federal constitutions. However, appellant did not object to parole on this basis. "As a general rule, 'complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' [Citation.] A claim that a sentence is cruel or unusual requires a 'fact specific' inquiry and is forfeited if not raised below." (*People v. Baker* (2018) 20 Cal.App.5th 711, 720.) Appellant has thus forfeited this argument.

### 3. *We Strike the Parole Revocation Fine*

Lastly, we agree with the parties that the parole revocation fine must be stricken as it violates the ex post facto clause. The "ex post facto clause forbids imposing a parole revocation fine on a parolee who committed the underlying crime prior to enactment of the fine." (*People v. Callejas* (2000) 85 Cal.App.4th 667, 676

(*Callejas*); *People v. Flores* (2009) 176 Cal.App.4th 1171, 1181–1182 [stating same].)

Here, the trial court imposed and stayed a $300 parole revocation fine under section 1202.45. The Legislature enacted section 1202.45 in 1995, nearly a decade after appellant's offense. (Stats. 1995, ch. 313, § 6 (AB 817), effective August 3, 1995.) We therefore strike the fine. (*Callejas, supra,* 85 Cal.App.4th at p. 678.)

## *DISPOSITION*

The trial court is directed to amend the abstract of judgment to strike "$300 per PC 1202.45" in paragraph number 5. The trial court is directed to forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J.