Filed 3/8/23  P. v. Zavaleta CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060449 |
| v. | (Super. Ct. No. 18CF1068) |
| JAVIER ZAVALETA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

Javier Zavaleta appeals from a judgment after a jury convicted him of deliberate and premeditated attempted murder and felonious possession of a firearm and found true firearm and gang enhancements. Zavaleta argues the following: (1) Assembly Bill No. 333 (2021-2022 Reg. Sess.) (AB 333) requires we reverse the gang enhancement; (2) AB 333 requires we reverse his deliberate and premeditated attempted murder conviction; (3) we must make an independent review of the trial court's ruling on his motion to disclose police officer personnel records (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)); and (4) the court erred by failing to award him presentence custody credits.

The Attorney General agrees with all but his second contention, as do we. We reverse the true finding on the gang enhancement, award him presentence custody credits, and remand for further proceedings. Our independent review of the *Pitchess* hearing reveals the trial court did not abuse its discretion by concluding there was no discoverable information. In all other respects, we affirm the judgment.

## FACTS[1]

About 3:00 a.m., Christopher M. was walking home in Los Compadres gang claimed territory. He was affiliated with that gang.

Christopher saw a Toyota Camry speeding toward him with its headlights off. The driver, Zavaleta, a Southside gang member, fired a gun at Christopher through an open window. Christopher collapsed on the ground and heard the Camry crash.

First responders arrived. Christopher was taken to the hospital to treat a gunshot wound to his hip.

---

[1] Zavaleta does not challenge the sufficiency of the evidence to support his convictions. Under established appellate principles, we recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

Police officers searched the area and found Abel P., a Los Compadres gang member with whom Christopher had been previously arrested.[2] Officers searched a nearby shed but found nothing relevant to the shooting.

Officers observed the Camry had crashed into several cars. Both front windows were rolled down. Officers found five .40 caliber shell casings (two in the Camry and three on the street); all were fired from the same gun. The Camry was registered to Zavaleta and his mother.

Two days after the shooting, detectives interviewed Zavaleta. He claimed he was at Joanna G.'s house the night of the shooting. He denied being involved in a shooting recently and denied anyone had shot at him. Officers later intercepted Zavaleta's telephone call to his mother—he asked his mother to tell Joanna to tell police that he was with her the night of the shooting.

Detectives interviewed Christopher three times. Christopher described the shooting and identified Zavaleta as the shooter in a six-pack photographic lineup. Christopher said he was alone and unarmed. Before trial, an inmate approached Christopher and threatened him if he testified.

An information charged Zavaleta with the following: deliberate and premeditated attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a), all further statutory references are to the Penal Code, unless otherwise indicated (count 1)), and possession of a firearm by a felon (§ 29800, subd. (a)(1) (count 2)). The information alleged he committed both counts for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) As to count 1, it alleged he personally discharged a firearm causing great bodily injury. (§ 12022.53, subd. (d).) With respect to count 2, it alleged he used a firearm intending to cause great bodily injury. (§ 667, subd. (e)(2)(C)(iii).) Finally, it

_____

[2]     At trial, Abel invoked his Fifth Amendment rights.

alleged he suffered two prior serious and violent felony convictions (§§ 667, subds. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A)), and two prior serious felony convictions (§ 667, subd. (a)(1)).

Zavaleta filed a *Pitchess* motion for the case's lead investigator. The trial court granted the motion, reviewed the police officer's personnel records in camera, and determined there were no records responsive to the motion.

At trial, Christopher repeatedly claimed he did not remember the details of the shooting, the identity of the shooter, or his previous statements to detectives, including after listening to recordings of him describing the suspect. Christopher claimed he was under the influence of methamphetamine when he spoke to detectives and he lied about everything.

Officer Christopher Shynn testified as the prosecution's gang expert. After detailing his training and experience, Shynn testified concerning Southside's membership, primary activities (felons in possession of firearms and possession of methamphetamine for sale), signs, and pattern of criminal gang activity (records of convictions for Manuel Burciaga for murder and assault with a firearm). He stated Southside had several rivals, including Los Compadres. He opined Zavaleta was a member of Southside based on a previous contact and his gang tattoos, photographs of which were shown to the jury.

Shynn explained that in gang culture, it was disrespectful and could incite violence if a gang member went into rival gang territory. He added gang members earn respect by committing violent acts and they use guns to shoot rival gang members. Based on a hypothetical question rooted in the facts of the case, he opined a Southside gang member who went into Los Compadres claimed territory and shot a member of that gang would gain respect in his gang because he "lessen[ed]" the rival gang.[3]

---

[3] The trial court instructed the jury with CALCRIM No. 1403, "Limited Purpose of Gang Activity."

4

Twenty-six-year-old Zavaleta testified in his own defense. He admitted he had been a Southside gang member since he was 13 years old. Zavaleta testified he was driving through Los Compadres claimed territory because it was a shortcut home—he did not have his driver's license and was armed and under the influence of heroin. He said someone shot at him and he crashed the Camry. He got out of the car and started shooting a .40 caliber gun, even though he did not see anyone. He ran home and later gave the gun to another Southside gang member. He knew Abel was a member of Los Compadres. He believed Abel knew him as a Southside gang member and recognized the Camry.

Zavaleta offered testimony from a firearm expert and an officer to support his claim he acted in self-defense. The officer testified that based on his preliminary investigation he concluded the Camry crashed after being shot at. On cross-examination, the officer admitted he had no accident reconstruction training.

The jury convicted Zavaleta of both counts and found true all findings, except the jury did not make a finding on the criminal street gang allegation as to count 2. At a bifurcated bench trial, the trial court found true the prior conviction allegations. After the court denied his motion pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, it sentenced him to 60-years-to-life in prison. The court did not award him any days of presentence conduct credits.

DISCUSSION

I. *AB 333*

Zavaleta raises two issues concerning AB 333. We address each in turn.

A. *Section 186.22*

Zavaleta argues, and the Attorney General concedes, AB 333 applies retroactively and thus the section 186.22 enhancement as to count 1 must be reversed and the matter remanded because the jury was not asked to and did not make the newly required factual determinations. We agree.

5

As relevant here, the California Street Terrorism Enforcement and Prevention Act (§ 186.20 et seq.) created a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with a criminal street gang" (§ 186.22, subd. (b)(1)). (See *People v. Valencia* (2021) 11 Cal.5th 818, 829.) To establish a gang is a "'criminal street gang,'" the prosecution must prove the gang has as one of its "primary activities" the commission of one or more of the crimes enumerated in section 186.22, subdivision (e), and it has engaged in a "'pattern of criminal gang activity'" by committing two or more such predicate offenses. (§ 186.22, subds. (e), (f).)

After trial in this case, AB 333 made substantial revisions to section 186.22 effective January 1, 2022. We need not detail all those changes here—one will suffice.

AB 333 modified the definition of "'pattern of criminal gang activity'" to require that (1) the last offense used to show a pattern of criminal gang activity "occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed"; (2) "the offenses were committed on separate occasions or by two or more members," as opposed to *persons*; and (3) "the offenses commonly benefitted a criminal street gang," and the common benefit was "more than reputational." (§ 186.22, subd. (e).)

The parties agree AB 333 applies retroactively to Zavaleta. Courts of Appeal that have considered the issue have concluded AB 333 applies retroactively where, as here, a defendant's conviction was not final before the amendments took effect. (*People v. Sek* (2022) 74 Cal.App.5th 657, 667 (*Sek*); *People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344.) We agree with this well-reasoned authority and conclude AB 333 applies retroactively to Zavaleta's case because judgment was not final as of January 1, 2022. (*In re Estrada* (1965) 63 Cal.2d 740, 748 [statutory changes that reduce punishment for a crime apply retroactively to all judgments not yet final on statute's effective date].)

The parties also agree the gang enhancement as to count 1 must be reversed. Unsurprisingly, the jury was not required to find, and there was insufficient evidence, the common benefit of the predicate offenses was more than reputational. Burciaga's records of conviction do not include sufficient details to reasonably conclude the offenses provided more than a reputational benefit to his gang. That is now impermissible pursuant to AB 333. (See § 186.22, subd. (e) [benefit must be more than reputational]; *People v. E.H.* (2022) 75 Cal.App.5th 467, 478 [same].)

Accordingly, the evidence adduced at trial to prove a criminal street gang itself is no longer valid. The existence of a criminal street gang is a prerequisite to proving the gang enhancement. (§ 186.22, subds. (b)(1), (f); *People v. Vasquez* (2016) 247 Cal.App.4th 909, 922.) We reverse the jury's true findings on the gang allegation as to count 1 (§ 186.22, subd. (b)(1)). We agree with the parties the prosecution may seek to retry the gang enhancement as to count 1, and count 2, on which surprisingly the jury did not return a verdict and neither the trial court nor the parties noticed.

In *Sek, supra,* 74 Cal.App.5th at page 669, the court faced the identical issue. It stated the following: "Our decision does not bar the prosecution from retrying [defendant] on the gang enhancements upon remand. 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial. [Citations.] "'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' [Citation.]" [Citation.]' [Citations.]" We agree with the *Sek* court and conclude the prosecution can retry Zavaleta on the gang enhancement. We remand the matter for further proceedings consistent with this opinion.

7

*B.  Section 1109*

Zavaleta contends the recently enacted section 1109 applies retroactively and requires we reverse his deliberate and premeditated attempted murder conviction. We disagree.

AB 333 also added section 1109, which requires a trial court to conduct a bifurcated trial on gang enhancements.  (§ 1109, subd. (a); Stats. 2021, ch. 699, § 5, eff. Jan. 1, 2022.)  The jury must first determine the question of the defendant's guilt of the underlying offense and, if it finds the defendant guilty, must then determine "the truth of [any] enhancement" under section 186.22, subdivision (b) or (d).  (§ 1109, subd. (a).)

Appellate courts have issued conflicting decisions on the issue of retroactivity of section 1109.  (Compare *People v. Perez* (2022) 78 Cal.App.5th 192, 207, review granted Aug. 17, 2022, S275090, with *People v. Burgos* (2022) 77 Cal.App.5th 550, 565-567, review granted July 13, 2022, S274743.)  We need not address whether section 1109 applies retroactively here because, even assuming retroactivity, Zavaleta was not prejudiced by any failure to bifurcate the gang allegations.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1208 (*Tran*) [rejecting defendant's claim of structural error].)

In *Tran, supra,* 13 Cal.5th at page 1209, our Supreme Court found it unnecessary to decide whether section 1109 applied retroactively because any error in failing to bifurcate the trial of the gang allegations was harmless.  We take the same approach here and reach the same conclusion.[4]

As the *Tran* court recognized, certain errors of state law may require the application of the *Chapman v. California* (1967) 386 U.S. 18, harmless error standard if they rise to federal constitutional error under the due process clause by rendering the trial

---

[4] Because of this approach, we need not address the Attorney General's contention Zavaleta forfeited appellate review of this issue by failing to move for bifurcation pursuant to authority existing at the time of trial. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1048 (*Hernandez*).)

fundamentally unfair. (*Tran, supra,* 13 Cal.5th at p. 1209.) However, as in *Tran*, Zavaleta has not persuaded us the failure to bifurcate the gang enhancements rendered the trial fundamentally unfair.

Most of the gang evidence was relevant to the substantive offenses, and the limited amount of evidence relevant only to the gang enhancement was not particularly inflammatory. Evidence of Zavaleta's membership in Southside, its rivalry with Los Compadres, Christopher's affiliation with Los Compadres, and that the shooting occurred in Los Compadres claimed territory would have been admitted at his trial on the murder charge because the evidence was relevant to show his motive for gunning down Christopher in his rival gang's territory. (*Hernandez, supra,* 33 Cal.4th at pp. 1049-1050 [bifurcation unnecessary where "the evidence supporting the gang enhancement would be admissible at a trial of guilt"].) This evidence tended to prove Zavaleta's intent to kill and his premeditation and deliberation. Additionally, because Zavaleta admitted he was the shooter, there was no danger the jury identified him as the shooter merely because of his gang membership. Finally, the gang evidence supported Zavaleta's claim of self-defense. He testified he was driving through Los Compadres claimed territory when someone shot at him. He asserted Abel was a Los Compadres gang member who recognized him as a rival and recognized his car. The gang evidence would assist the jury in understanding why a rival gang member would shoot at him.

Like in *Tran*, having rejected the contention the failure to bifurcate the gang allegations rendered the trial fundamentally unfair, we apply the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818. (*Tran, supra,* 13 Cal.5th at p. 1209.) Under that standard, we conclude there is no reasonable probability of a different outcome had the gang enhancement been bifurcated from underlying offenses.

To repeat, much of the gang evidence would have been admissible to establish intent and motive in Zavaleta's attempted murder trial. He admits as much. Based on our review of the record, only a small fraction of the gang evidence admitted at

9

trial was relevant solely to the gang enhancement and not to the charged offenses. That evidence primarily consisted of the testimony about the two predicate offenses Burciaga committed. However, as we explain above, that evidence was presented in a cursory and sanitized manner.

Contrary to Zavaleta's claim, the gang evidence and evidence of his gang tattoos would not so infect the trial that it would cause the jury to prejudge him. Indeed, the trial court instructed the jury concerning the limited purpose of this evidence— Zavaleta's motive to commit the charged offenses or his actual belief in the need to defend himself. The instruction continued, "You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime." We presume the jury follows the trial court's instructions. (*People v. Franklin* (2016) 248 Cal.App.4th 938, 953 [appellate court presumes jury followed limiting instruction regarding gang evidence].)

Finally, the evidence of Zavaleta's guilt was strong and self-defense was weak. The evidence demonstrated the following: The Camry was registered to Zavaleta and his mother; Zavaleta's gun matched the caliber of the bullet casings in and near the Camry; Christopher recognized the Camry as the car speeding toward him; and Christopher identified Zavaleta in a photographic lineup as the man who shot him. True, Christopher's memory lapsed at trial. But that was a matter for the jury to weigh, and there was evidence that in jail someone threatened him if he testified. Not only was the evidence of Zavaleta's guilt strong, his claim of self-defense was weak. Two days after the shooting, Zavaleta told detectives he was with Joanna the night of the shooting and no one had shot at him. And there was evidence that after talking with detectives, Zavaleta tried to fabricate an alibi. After time to reflect, Zavaleta changed tack at trial. He was driving through Los Compadres' claimed territory under the influence of heroin when someone shot at him and he crashed. After getting out of the car, and not seeing anyone,

10

he fired indiscriminately.  His story stretched the bounds of credibility.  Thus, Zavaleta was not prejudiced by trying the gang enhancement with count 1.

## II.  *Pitchess*

Zavaleta requests we make an independent review of the trial court's ruling on his *Pitchess* motion.  The Attorney General does not object to our review.

A criminal defendant is entitled to the discovery of confidential police officer personnel records if the information contained therein is relevant to defend against the charge.  (*Pitchess, supra,* 11 Cal.3d at pp. 537-538.)  To obtain such records, the defendant must submit an affidavit showing good cause for the discovery.  (Evid. Code, § 1043, subd. (b)(3).)  A showing of good cause requires a defendant seeking *Pitchess* discovery "to establish . . . a logical link between [a proposed defense] and the pending charge" and "to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events."  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.)  Discoverable information is "limited to instances of officer misconduct related to the misconduct asserted by the defendant."  (*Ibid.*)

Under *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232 (*Mooc*), upon a request from a defendant, an appellate court may review the sealed transcript of a trial court's in camera *Pitchess* hearing to determine whether the trial court disclosed all relevant documents.  The police officer's personnel records are not part of the record on appeal.

We have only the sealed transcript of the trial court's in camera review. When the confidential personnel records themselves are subsequently unavailable, the appellate court may conduct an adequate review by considering only the sealed transcript. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *Mooc, supra,* 26 Cal.4th at p. 1229.)

We have reviewed the relevant transcripts.  A custodian of records was present and placed under oath, indicating he had brought all responsive documents with them.  The custodian identified and presented for review seven matters for the relevant

11

officer, which the trial court reviewed. The custodian also provided the court with the police officer's personnel records, which it reviewed. The court concluded there was no discoverable information because there was nothing demonstrating the police officer's lack of credibility. These proceedings were stenographically recorded. (*Mooc, supra,* 26 Cal.4th at p. 1229.) The trial court properly complied with the required *Pitchess* procedures.

## III. *Section 2933.1*

Zavaleta argues the trial court erred by failing to award him presentence conduct credits. The Attorney General concedes the error.

Section 2933.1, subdivision (a), states, "Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of [s]ection 667.5 shall accrue no more than 15 percent of worktime credit, as defined in [s]ection 2933." Attempted murder is listed in section 667.5, subdivision (c)(12), and attempted willful, deliberate, and premeditated murder is not a crime for which a defendant is denied worktime credits. (§ 2933.2 [those convicted of *murder* ineligible for presentence conduct credits].)

Here, the trial court did not award Zavaleta any presentence conduct credits. The Attorney General concedes this was error that we can correct on appeal. Zavaleta was in presentence custody from the date of his arrest on April 23, 2018, through his sentencing hearing on October 11, 2019. Both Zavaleta and the Attorney General agree he is entitled to 617 days of credit. We modify the judgment to reflect Zavaleta is awarded 537 actual days and 80 conduct credits days for a total of 617 days of credit. (*People v. Flores* (2009) 176 Cal.App.4th 1171, 1182 [appellate court calculated conduct credits in interest of judicial efficiency].)

## DISPOSITION

The jury's true finding on the section 186.22, subdivision (b)(1), finding as to count 1 is reversed. The clerk of the superior court is directed to reflect Zavaleta has

537 days of actual days plus 80 days of conduct credit for a total of 617 days credit. The clerk of the superior court is directed to prepare a new abstract of judgment reflecting the new award of credits, and to forward the amended abstract of judgment to the Department of Corrections, Division of Adult Operations, either after retrial on the section 186.22, subdivision (b)(1), enhancement, or immediately if the prosecution elects not to retry Zavaleta on the enhancement.

In all other respects the judgment is affirmed. The matter is remanded for further proceedings consistent with this opinion.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


DELANEY, J.


13